THE STATE OF OHIO, APPELLEE, *v.* JOHNSON, APPELLANT.

(No. 40770—Decided April 17, 1968.)

68

*Mr. George E. Martin,* prosecuting attorney, for appellee.

*Mr. Gerald A. Messerman,* for appellant.

*Per Curiam.* The appellant claims that he was denied a fair trial because he was incarcerated and without counsel for approximately three months after his arrest and therefore had no means of contacting his alibi witnesses before their memories of the events constituting his alibi had dimmed.

It would be superfluous to discuss the merits of this claim, as we did a comparable claim on the direct appeal from the judgment of conviction in *State* v. *Childs, ante* 56. This claim could have been raised before trial, at trial, or on appeal, and since it was not it is now barred by the doctrine of *res judicata. State* v. *Perry,* 10 Ohio St. 2d 175.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, SCHNEIDER and BROWN, JJ., concur.

HERBERT, J., dissenting. I regret that I am unable to concur in the opinion of my colleagues in the case at bar. An indigent prisoner, whose education was limited to the second grade in elementary school, who had an excellent reputation, was a steady worker and church member, stands convicted of the crime of rape on two counts and faces a consecutive term sentence of up to 40 years in the penitentiary. Two women were raped. Rape is among the most horrible and revolting crimes known to our society. The

crime of rape is difficult to prove, but it is far more difficult for an indigent prisoner to establish his innocence.

I will endeavor to consider the questions raised by the petition and the record, and discuss them as they appear.

Claimed errors numbers one and two may be consolidated.

1. Denial of due process under the laws of Ohio.

2. Denial of rights of the petitioner guaranteed him by the Constitution of the United States and the Constitution of Ohio.

On October 10, 1962, the petitioner was arrested, without a warrant, and lodged in the jail, accused of the crime of rape. He was accused of committing rape on August 7 and August 20, 1962. Immediately after his arrest he was interrogated by police officers for six hours without the assistance of counsel or any explanation of his rights. At intervals after his arrest the two victims of the attack were brought to the police station and placed in one room where a mirror arrangement provided a view of the interior of an adjoining room. The petitioner was placed in this room *alone* and the victims viewed him through the mirror. Each of them identified him as the assailant. This, likewise, took place without the assistance of counsel.

The state protests that the answers elicited from the petitioner during the six-hour interrogation in the absence of counsel were not introduced or admitted in evidence hence, therefore, any error was cured. However, the record discloses that the state used the answers given by the petitioner as the basis of a long and severe cross-examination at the trial upon the indictment. Many such questions were similar to "Didn't you say to the officers this or didn't you say to the officers, that when they were questioning you?" This may have resulted, or did result, in serious prejudice to the rights of the petitioner, as such a procedure would tend to cause the jury to speculate or draw inferences not warranted by the context of petitioner's statements. See *Escobedo* v. *Illinois,* 378 U. S. 478; *Gideon* v. *Wainwright,* 372 U. S. 335, 342; *United States* v. *Wade,* 18 L. Ed. 1149;

Sixth Amendment to the Constitution of the United States and Section 10 of the Bill of Rights of the Constitution of Ohio.

The General Assembly has enacted laudible legislation to protect the rights of an accused person, particularly those unable to procure bail from the date of arrest to the date of trial. We will refer to some of the applicable sections of the Revised Code.

Section 2937.02 of the Revised Code of Ohio provides:

"When, after arrest, the accused is taken before a court or magistrate, or when the accused appears pursuant to terms of summons or notice, the affidavit or complaint being first filed, the court or magistrate shall, before proceeding further:

"(A) Inform the accused of the nature of the charge against him and the identity of the complainant and permit the accused or his counsel to see and read the affidavit or complaint or a copy thereof;

"(B) Inform the accused of his right to have counsel and the right to a continuance in the proceedings to secure counsel;

"(C) Inform the accused of the effect of pleas of guilty, not guilty, and no contest, of his right to trial by jury, and the necessity of making written demand therefor;

"(D) If the charge be a felony, inform the accused of the nature and extent of possible punishment on conviction and of the right to preliminary hearing. * * *"

The petitioner was denied these rights, and was deprived of such information so valuable to an accused, particularly one without a police record.

Section 2937.03 of the Revised Code provides:

"* * * the accused shall be arraigned by the magistrate, or clerk, or prosecutor of the court reading the affidavit or complaint * * *. The judge or magistrate shall then inquire of the accused whether he understands the nature of the charge. If he does not indicate understanding, the magistrate shall give explanation in terms of the statute or ordinance claimed violated. If he is not represented by

counsel and expresses desire to consult with an attorney at law, the judge or magistrate shall continue the case for a reasonable time to allow him to send for or consult with counsel and shall set bail for such later appearance if the offense is bailable. If the accused is not able to make bail, or the offense is not bailable, the court or magistrate *shall require the officer having custody of accused forthwith to take a message to any attorney at law within the municipal corporation where accused is detained, or to make available to accused forthwith use of telephone for calling to arrange for legal counsel or bail.*'' (Emphasis added.)

3. The evidence is not sufficient, as a matter of law, to sustain the judgment of conviction.

The police relied heavily upon the claim that the assailant drove a black automobile and that petitioner was the owner of a black automobile and, therefore, that he was guilty of the two rapes. The evidence for the state discloses that, on the date of one of the attacks, a Negro drove a black Chrysler automobile, according to one witness, and a black Chevrolet, according to another, in the vicinity of the home of one of the victims. Witnesses for the state described the assailant's car as bright, ''shiny,'' with chrome molding encircling the car, not very old and well-kept. The state's witnesses described the petitioner's car as a 1955 or 1956 black Chevrolet, recently in a collision and not very well kept. It seems strange that the state, which had petitioner's car in its possession, did not offer to permit the jury to view it in order to permit the jury to compare its appearance to that of the assailant's car as described in the evidence.

A composite picture, an imaginary creation of the general appearance of the criminal, was shown to the victims to aid them in identifying the petitioner. The testimony of the official of the Ohio Bureau of Criminal Identification and Investigation, in charge of the use of composite drawings, described how it was constructed. He had a composite drawing on the witness stand while testifying. This exhibit was not admitted in evidence but the testimony describing it was allowed to stand. Local police

witnesses testified that the composite drawing varied from the appearance of the petitioner. The two victims gave the only testimony identifying the petitioner. The testimony of these two differed vitally in respect to the features of the assailant and the petitioner. Miss Biltz did not remember if her assailant had a mustache. Mrs. Pease, the other victim, was positive, in her testimony, that her assailant did not have a mustache; that he had a scratch on his upper lip, probably caused by scraping off the head of a pimple on his upper lip. It is not disputed that the petitioner had a mustache for several years and one of the investigating officers testified that, when asked if petitioner had a mustache, replied, "* * * I feel sure he did."

The defense introduced the testimony of substantial witnesses that petitioner enjoyed a good reputation. He was an excellent conscientious workman engaged in common labor.

Evidence was offered by the defense to establish an alibi. In addition to oral testimony, there was offered in evidence and admitted records of his employer showing that the petitioner worked eight hours on August 7, the date of the first attack, and that he was engaged in his employment at the time of the attack.

Several witnesses testified that petitioner was at church on August 19 and became ill; that this illness was caused by an infection in petitioner's jaws as a result of the extraction of several teeth a few days before; and that he was home in bed the next day as a result of this infection. The dentistry had been performed at a clinic in Cleveland. Petitioner recalled and gave the name of the street upon which the clinic was located, but he did not remember the name of the clinic. The prosecutor did have the name of this clinic and it may be reasonably inferred that the police or officers of the sheriff's office had visited this clinic in their investigation, following petitioner's account to them of his trouble with his teeth and their subsequent extraction. Unfortunately, if such investigation was made, the state did not divulge any information that

the records at the clinic disclosed. If the above inference is correct, it would appear that justice would require the state to turn over to the defense the information that it obtained from the clinic.

4. A preliminary hearing consistent with the requirements of the statute was denied the petitioner.

Section 2937.11 of the Revised Code reads:

"At the preliminary hearing pursuant to Section 2937.-10 of the Revised Code, the prosecutor may, but shall not be required to, state orally the case for the state, and shall then proceed to examine witnesses and introduce exhibits for the state, under the rules of evidence prevailing in criminal trials generally, the accused and the magistrate having full right of cross-examination and the accused the right of inspection of the exhibits prior to their introduction. On motion of either the state or the accused, witnesses shall be separated and not permitted in the hearing room except when called to testify."

Section 2937.12 of the Revised Code reads:

"(A) At the conclusion of the presentation of the state's case *accused may move for discharge for failure of proof or may offer evidence on his own behalf. * * *"* (Emphasis added.)

After being held in jail seven days without having been brought before a judge or magistrate, petitioner was brought into Municipal Court. One witness was examined and thereupon the court set the bond at $30,000 and bound the petitioner over to the grand jury. His rights at this preliminary hearing were not explained to him, particularly that he was entitled to counsel and that he had the right to present evidence in his own behalf.

A preliminary hearing, and the exercise of the rights of the petitioner at such a hearing, constituted a highly critical stage of the proceedings against him. He could have presented witnesses in support of his claimed alibi who would have testified while their recollection of his whereabouts on August 7 and August 20, 1962, was still fresh in their memories.

The prosecutor emphasized the tendency of witnesses

to forget incidents after a long time had elapsed since their occurrence. Had the petitioner been allowed to have counsel this effective argument of the prosecutor would not have been available. Words can hardly describe the importance of an effective preliminary hearing when there are strong indications of innocence on behalf of the defendant. Briefly, a preliminary hearing under the statutes of Ohio reaches the dignity of a formal trial, with practically every right accorded to the defendant that is available in a trial upon an indictment.

The majority, in its *per curiam* opinion, makes reference to the preliminary hearing in this language:

"* * * Since appellant could not post bond, he remained in jail. At this time he had no counsel, and there is no indication that he was advised of his right to counsel."

On January 17, 1963, after the return of the indictment, petitioner was brought before the Court of Common Pleas and then and there, about 100 days after his arrest, he was, for the first time, advised of his right to have the assistance of counsel. Four days later, on January 21, the petitioner was brought into the Court of Common Pleas and thereupon, assisted by counsel appointed by the court, petitioner entered a plea of not guilty. The court set the case for trial on January 28, 1963, allowing petitioner and his newly appointed counsel only seven days to prepare the defense. The prosecutor, assisted by the office of the county sheriff, the police of the city of Ravenna, a representative of the Ohio State Bureau of Criminal Investigation and Identification and probably the Federal Bureau of Investigation, had a matter of about 100 days to prepare the case for the state, as compared to seven days allowed the petitioner and his newly appointed counsel to prepare the defense.

This court, in its *per curiam* opinion, discusses this claim as follows:

"The appellant claims that he was denied a fair trial because he was incarcerated and without counsel for approximately three months after his arrest and therefore

had no means of contacting his alibi witnesses because their memories of the event constituting his alibi had dimmed.

"It would be superfluous to discuss the merits of this claim, as we did a comparable claim on the direct appeal from the judgment of conviction in *State* v. *Childs, ante,* 56. This claim could have been raised before trial, at trial, or on appeal, and since it was not it is now barred by the doctrine of *res judicata. State* v. *Perry,* 10 Ohio St. 2d 175.

I cannot agree that *Perry* denies to the petitioner the protection of the postconviction legislation enacted by the Ohio General Assembly. Section 2953.21 of the Revised Code.

Petitioner was arrested on October 10, 1962, convicted and sentenced in January of 1963. The postconviction legislation was enacted and became effective in 1965. Petitioner's petition under this legislation was filed on November 1, 1965,—more than three years after his arrest, and after his conviction. The Court of Common Pleas dismissed this petition on December 29, 1965, and the Court of Appeals affirmed this judgment on January 7, 1967. *Perry was decided on May 3, 1967,* almost four months after the final order of the Court of Appeals was journalized. *Perry* is not retroactive.

It appears to me that this court should review the record to determine if the Court of Common Pleas and the Court of Appeals committed error in the light of the postconviction legislation. Both of these courts based their judgments entirely on the provisions of the postconviction legislation and made no reference whatsoever to *res judicata. Perry* was not in existence during these reviews.

In its findings of fact and conclusions of law, as provided in Section 2953.21 of the Revised Code (postconviction legislation) the Court of Common Pleas stated:

"* * * that there was no infringement of the constitutional rights of this defendant and, therefore, the petition to vacate or set aside the sentence is hereby dismissed."

In its pertinent part the journal entry of the Court of Appeals reads:

76

"The court, upon considering the pleadings and argument of counsel and reviewing the record, hereby finds that the record clearly shows that appellant [petitioner here] was not denied *his constitutional rights under the Ohio Constitution or the Constitution of the United States.*" (Emphasis added.)

It is quite apparent that both the Court of Common Pleas and the Court of Appeals passed upon questions raised by the postconviction remedy legislation.

For the foregoing, as well as other, reasons disclosed by the record, the judgment of the Court of Appeals should be reversed and as certain of petitioner's constitutional rights have been denied him and cannot now be corrected, petitioner should be discharged.