**Barney Lee PETTETT, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 19686.**

United States Court of Appeals, Sixth Circuit.

Nov. 13, 1970.

Barney Lee Pettett, in pro. per.

Thomas F. Turley, Jr., U. S. Atty., Larry E. Parrish, Asst. U. S. Atty., Memphis, Tenn., on brief, for appellee.

Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

This is the fourth time that appellant, Barney Lee Pettett, has appealed to this Court from District Court proceedings having to do with his conviction, upon jury trial, of participation, on April 26, 1963, in the robbery of a bank in Memphis, Tennessee. This appeal is from District Judge Bailey Brown's denial of Pettett's § 2255 motion. The motion charged that it was violative of the Unit-

ed States Constitution to allow eyewitnesses to the robbery to get a look at Pettett at his arraignment.

We affirm.

The robbery, carried out by three desperadoes, was a bold affair. Without masks or other means of impairing identification, and brandishing guns, they robbed the Medical Center Branch of the First National Bank of Memphis, obtaining the approximate sum of $46,000. Following the robbery, Pettett was identified as one of the robbers by five eyewitnesses, three of whom were employees of the robbed bank and two who were university students present as customers of the bank.[1] These witnesses made unequivocal identification of appellant and in none of Pettett's addresses to us is their credibility or the probative worth of their testimony challenged. As is currently the vogue in matters of this kind, appellant makes no suggestion that he was not guilty of the crime for which he was convicted. The history of this matter further discloses that the charge made in this case was but one of several made against Pettett for participation in like enterprises.

After his apprehension, Pettett was brought for arraignment before a District Judge at Memphis and, unknown to him, four of the eyewitnesses to the robbery were present in the courtroom. They had been brought into the courtroom to take a look at Pettett, their earlier identification of him having been from photographs shown to them by the FBI. All or some of these witnesses had also been taken to a United States District Courtroom in Louisville where they identified Pettett's companions in the robbery. All three of the identified robbers were later held in custody in Memphis and a lawyer was appointed for each. At a hearing held on September 4, 1964, the three accused were present

and it was expected that all would plead guilty to the robbery. However, appellant, apparently to the surprise of his appointed counsel as well as others present in the courtroom, stood on his plea of not guilty. His codefendants entered pleas of guilty and the trial of Pettett was set for September 8, following. Robert G. Drewry of the Memphis Bar had been appointed and appeared as counsel for Pettett at his arraignment on July 31, 1964. On the date set for trial, Pettett, speaking for himself, asked that new counsel be appointed for him and that the case be continued. Both requests were denied. Pettett then requested and received permission to defend himself. The District Judge tried to persuade him to continue to accept the services of his appointed counsel, whose recognized ability as a defense advocate is not questioned. Insisting on defending himself, he accepted the District Judge's suggestion that this counsel sit with him throughout the trial to be available to provide such help to Pettett as he would request. Pettett and his appointed counsel both participated in the trial, which ended on September 9, 1964, with the jury's verdict of guilty. Pettett's first appeal followed.

The details of the above proceedings are set out at length in Judge McAllister's opinion in United States v. Pettett, 359 F.2d 978 (6th Cir. 1966). On that appeal, Pettett asserted among other claims of error that his request for new counsel and postponement of his trial should have been granted. We initially remanded the matter to the District Court for the following purpose:

"Accordingly, without reversal of the judgment, the case is remanded to the District Court to hold a hearing and make inquiry in accordance with the views herein expressed as to the statements of appellant and of Mr. Drewry,

---

1. Four of the eyewitnesses first identified Pettett from photographs shown to them by FBI agents after the robbery. It is likely that the fifth witness' first identification was also made by picking out Pettett's picture, although the record is silent as to this. Each witness picked out Pettett from a large number of pictures shown to him. These initial identifications were made prior to Pettett's apprehension.

to which reference has been made, and to receive in evidence the testimony of appellant, of Mr. Drewry, and of any other witnesses having knowledge of such statements; and to return to this Court, with a transcript of the testimony so taken, its findings thereupon. An order will be entered to this effect." 359 F.2d at 983.

The lawyer appointed for Pettett at the time of his arraignment and who acted as an advisor and participated in the trial was described in Judge McAllister's opinion as "an experienced lawyer and a former Assistant Attorney General of the County." 359 F.2d at 979. To prosecute Pettett's first appeal, we appointed Mr. James J. Ryan of Cincinnati as his counsel. He was allowed to prosecute the appeal in forma pauperis, and a transcript of the evidence and proceedings at Pettett's trial was provided at government expense.

Prior to the District Court hearing which was conducted in obedience to our mandate, the District Judge appointed still another attorney to represent Pettett at such hearing. This hearing, which developed some 349 pages of transcript, was had in July, 1966. District Judge Marion Boyd made extensive findings as required by our mandate. Included in them is the following:

"After this evidentiary hearing, there is in the Court's opinion no showing at all that the defendant Pettett was denied effective representation of counsel which he was entitled to receive under the Sixth Amendment."

\*   \*   \*   \*

"The Court instructs the official court reporter to transcribe these proceedings at Government expense."

These findings were returned to this Court and we again appointed Mr. James J. Ryan to present Pettett's claim of constitutional deprivation. He attacked Judge Boyd's findings. His counsel, as previously, exhibited skill and vigor in presenting Pettett's claims. This Court, nevertheless, affirmed the judgment of the District Court. Pettett's subsequent

petition to the United States Supreme Court for a writ of certiorari was denied, as was his motion for leave to file a petition for rehearing.

Our next consideration of appellant Pettett involved his motion to correct sentence under Rule 35, Fed.R.Crim.P. That petition asked that he be given credit for 195 days spent in jail awaiting trial for the Memphis bank robbery as well as jail confinement of him on other charges. The government did not oppose "movant's being granted credit for jail time." The District Court ordered that his sentence be reduced by 42 days, which was the number of days that Pettett spent in jail on the charges involving the Memphis bank robbery. His request that his sentence be reduced by the number of days he was confined upon other charges was denied. He again appealed and on January 3, 1969, the foregoing ruling of the District Judge was affirmed by the order of this Court.

On March 24, 1969, the motion here involved was filed under 28 U.S.C. § 2255. As originally filed, the motion averred that on the date of his arraignment, July 31, 1964, not only were persons who later identified him at trial present in the courtroom, but that questions by the District Judge then brought out the fact that there were other criminal charges pending against him. It is now conceded, however, that there was no such reference to other charges made at Pettett's arraignment. But Pettett insists that the arraignment colloquy between him and the District Judge, prior to the arrival of appointed counsel, was calculated to aggravate the claimed suggestiveness of having the prospective eyewitnesses present. Prior to the arrival in the courtroom of counsel, the District Judge advised Pettett that he had been indicted for bank robbery; asked him if he had been told of this; asked him how long he had been in custody; mentioned that he had been brought to Memphis from Louisville; and told him of his right to appointed counsel if he was indigent. Pettett de-

nied that he had known of his indictment. The District Attorney told the District Judge that his file reflected that the FBI had told Pettett of the charge that was outstanding against him; and it was mentioned that Pettett had been in custody for five months. The rest of the colloquy consisted substantially of the naming and sending for appointed counsel. Upon arrival of counsel, opportunity was provided for a conference between Pettett and him, after which a plea of not guilty was entered. Pettett's appeal to us asserts that having the eyewitnesses present at the arraignment was "so unnecessarily suggestive and conducive to irreparable mistaken identification that it constitutes denial of due process of law." We are not persuaded that the events and nature of appellant's arraignment visited upon him a deprivation of any constitutional right, or otherwise tainted his trial with error.

In denying the Section 2255 motion, the District Judge said:

"Movant also contends that he was denied a constitutional right because identification witnesses were brought to the arraignment proceedings and before counsel had been appointed for him. In this connection, movant apparently relies on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) which, however, under the holding in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), is not applicable here. Further, under *Stovall*, movant could have a claim for relief only if what was done violated due process.

"It was brought out at the trial that four of the Government's identification witnesses, Owens, Jasper, Herrington and Clifford, all of whom were in the bank at the time of the robbery, were present at the arraignment proceedings to confirm their identifications * * *. There was no objection to this in-court identification evidence. All had made identification or tentative identification of movant by photographs * * *. Movant and his counsel, at the time it was developed

that the witnesses had been at arraignment, also to some extent developed the circumstances of their viewing movant.

"This, then, is not a situation in which movant now discovers, after the trial, that the witnesses had been present at his arraignment. We therefore cannot say that this procedure was a violation of due process. As stated, the circumstances were developed to some extent, and this evidence was before the jury to weigh; more importantly, movant and his counsel had the opportunity to fully develop the circumstances.

"As a separate reason for denying relief, we point out that movant could have availed himself of these contentions on appeal; a motion to vacate cannot be used as substitute for appeal."

One of the eyewitnesses had not been present at the arraignment and her first look at him was at trial. However, she had picked him out as one of the robbers, as had other eyewitnesses, from pictures shown to her by the FBI. All of the eyewitnesses testified, in effect, that their view of Pettett at the arraignment confirmed, but was not necessary to, their certainty that he was one of the three who robbed the bank. In addition to the eyewitness identifications, the government put in evidence that early in May 1963—the robbery occurred on April 26, 1963—Pettett, using an alias and a fictitious story, purchased a 1962 Cadillac automobile, paying for it with cash in the amount of $4,281. A motel proprietor of Hot Springs, Arkansas, identified Pettett as one of three men who, with their ladies, spent the week prior to the robbery at a cabin available on the motel grounds. He picked out the three from a large number of photographs shown by FBI agents. Pettett had used a fictitious name, as did each of his companions. While in Memphis, this witness looked at the two men who had pleaded guilty to the involved robbery and identified them as Pettett's companions at

the Hot Springs Motel. Hot Springs is about 195 miles from Memphis.

All or some of the bank employees were cross-examined either by Pettett or his appointed counsel concerning the facts of their being in the district courtroom at the time of the arraignment. This cross-examination attempted impairment of the reliability of the identifications. The witnesses, however, insisted that the certainty of their identification was not the product of their arraignment view of Pettett. At the close of the government's case, the defense rested, offering no proofs. Pettett and his counsel were fully aware of the circumstances of the arraignment. Pettett's appointed counsel made an argument to the jury, devoted almost entirely to urging them to raise a doubt as to the validity of the eyewitnesses' testimony because of the suggestion allegedly provided by their presence at the arraignment. Neither by motion to suppress nor by objection to the evidence when offered, was the propriety of the use of the testimony of those who saw Pettett at the arraignment challenged. Therefore it was not saved as a question for review. It was not plain error under Fed.R.Crim.P. 52 (b).

We have studied the transcript of the arraignment and trial of Pettett. Because appellant alleges that constitutional rights were denied him, we have, from such study, made our own conclusion that the record exposes no impairment of any constitutional rights of Pettett. We have recited the law's treatment of Pettett, probably at undue length, because we believe that such exposition obviates our need to enter into our own dissertation upon what was decided by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and other recent cases which have dealt with the law's concern that identification evidence be subjected to careful scrutiny before it may be employed to convict any accused. We conclude:

1. That it is not necessary that we remand this case to the District Judge to provide the government "the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect [Pettett] other than [at the arraignment]." See Wade, supra, 388 U.S. at 240, 87 S.Ct. at 1939. We are satisfied that no further inquiry need be made to sustain the validity—vis-a-vis Pettett's constitutional rights—of the identifications made by the prosecution's witnesses. We are persuaded and find that the in-court view of Pettett was neither suggestive nor calculated to result in mistaken identification.

We consider that our decision in United States v. Black, 412 F.2d 687 (6 Cir. 1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970), is dispositive of this case. There we held that having identification witnesses observe an accused when the latter is brought into a courtroom, without more, will not foreclose use of the testimony of such witnesses. Wade and Gilbert, supra, were decided after the courtroom viewing here involved, and Stovall v. Denno, 388 U.S. at 300, 87 S.Ct. 1967, decided that those cases were not to be retrospectively applied. In Black, Chief Judge Weick speaking for us, said:

"In order to taint an identification it must appear that the viewing was unnecessarily suggestive and conducive to irreparable mistaken identification." 412 F.2d at 690.

See also United States v. Lipowitz, 401 F.2d 591 (3rd Cir. 1968), cert. denied, Muller v. United States, 395 U.S. 924, 89 S.Ct. 1778, 23 L.Ed.2d 240 (1969); United States v. Quarles, 387 F.2d 551 (4th Cir. 1967), cert. denied, 391 U.S. 922, 88 S.Ct. 1815, 20 L.Ed.2d 659 (1968).

**110**

2. Under the facts of this case, the failure of Pettett, aided by counsel, to challenge the validity of the identification evidence in his previous appeals has foreclosed such question now being presented in a motion under 28 U.S.C. § 2255. The fact of the arraignment view was known to Pettett and his counsel and was fully exploited by cross-examination and by argument. All of the trial procedures were disclosed by the transcript of the trial which was available to Pettett and to the able counsel that this Court appointed to prosecute his appeal. The point was not raised on appeal. Under this situation, we do not consider that the point could be withheld on appeal and saved for later use under § 2255. We are aware, of course, of the holding of Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), which placed limits upon the one time rule of the Circuits that points which could have been raised on appeal could not be presented under § 2255. See Eisner v. United States, 351 F.2d 55 (6th Cir. 1965). We however, do not read *Kaufman* as announcing that "anything goes" when employing § 2255. See *Kaufman, supra*, 394 U.S. at 227, n. 8, 89 S.Ct. 1068; Fay v. Noia, 372 U.S. 391, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Henry v. Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 13 L.Ed. 2d 408 (1965).

■ 3. Lastly, we are of the view that if use of the testimony of the witnesses who were present at appellant's arraignment could be considered an erroneous procedure, it did not, in the total context of the matter, "affect any substantial rights" of Pettett. Fed.R.Crim. P. 52(a). We are satisfied that any error that might be discerned in what happened was harmless. United States v. Wade, 388 U.S. at 242, 87 S.Ct. 1926; Gilbert v. California, 388 U.S. at 272, 87 S.Ct. 1951. We are persuaded that this is so beyond a reasonable doubt, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Judgment affirmed.