**Charles Victor JOHNSON, Petitioner-Appellee,**

v.

**W. D. SALISBURY, Superintendent, Chillicothe Correctional Institution, Chillicothe, Ohio, Respondent-Appellant.**

**No. 20258.**

United States Court of Appeals, Sixth Circuit.

March 18, 1971.

Rehearing Denied July 29, 1971.

Stephen M. Miller, Columbus, Ohio, for respondent-appellant; Paul W. Brown, Atty. Gen., Columbus, Ohio, on brief.

Gerald A. Messerman, Gold, Rotatori, Messerman and Hanna, Cleveland, Ohio, on brief, for petitioner-appellee.

Before BROOKS and MILLER, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

W. D. Salisbury, Superintendent, Chillicothe Correctional Institution, Respondent-Appellant, appeals from an order of the United States District Court for the Southern District of Ohio, Eastern Division, granting the petition of Charles Victor Johnson, Petitioner-Appellee, for a writ of habeas corpus.

Johnson, the petitioner in the District Court, was convicted in the Common Pleas Court of Portage County, Ohio, on an indictment containing two counts, each charging the petitioner with the rape of a female person in violation of Section 2905.01 Ohio Revised Code. He was sentenced on each count to three to twenty years in the Ohio State Penitentiary, the terms to run consecutively. The conviction was affirmed on direct appeal to the Portage County Court of Appeals and a motion for leave to appeal to the Supreme Court of Ohio was denied. A petition in the Supreme Court for a writ of habeas corpus was also denied.

A petition to vacate judgment filed in the state trial court under Ohio's post conviction remedy, Section 2953.21 et seq., was dismissed. This dismissal was sustained on appeals to the Court of Appeals of Portage County, Ohio and the Ohio Supreme Court. (Case No. 339 Seventh District Court of Appeals, Ohio, and State v. Johnson, 14 Ohio St.2d 67, 236 N.E.2d 552). The district judge held that the petitioner had exhausted his state remedies as required by Section 2254, Title 28, U.S.C. While it is not clear that the specific question now before us on this appeal was decided by

any of the state courts, we accept the conclusion of the district judge. No useful purpose would be served in remanding the case to the state trial court.

The district judge denied the petitioner's claim that he was denied due process of law by reason of the failure to appoint counsel to represent him for over three months after his arrest. Since the petitioner filed no cross appeal this question is not now before us.

The principal question before us is whether considering the totality of the circumstances, the identification procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law. Stovall v. Denno, 388 U.S. 293, 301, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Simmons v. United States, 390 U.S. 377, 382, 88 S.Ct. 967, 19 L.Ed.2d 1247; Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402; See United States v. Black, 412 F.2d 687, 690 (C.A. 6) cert. den., 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509; United States v. Laker, 427 F.2d 189, 190 (C.A. 6); United States v. DeBose, 433 F.2d 916, 917 (C.A. 6); Pettett v. United States, 434 F.2d 105, 106 (C.A. 6). We conclude that it was not and therefore reverse the judgment of the District Court.

Karen Biltz, a seventeen year old girl, while babysitting for the Frayer family in Rootstown, Ohio, was raped by a negro man on August 7, 1962. About two-thirty in the afternoon Karen observed a male negro walking around in the back yard. She walked into the kitchen and locked the screen. The man then came to the door and indicated he was there to do some work for Mrs. Frayer. Karen called Mrs. Frayer on the telephone and the man asked to speak to her. She opened the screen and handed him the phone. He mumbled something in the phone and then grabbed her around the neck. He disrobed her with the exception of her shoes and brassiere and forced her to have intercourse with him. He then tied her hands, gagged her and put her in the basement.

Immediately after the offense, Karen was shown numerous photographs from a "mug book". She did not identify her attacker among these photographs. On October 10, 1962 both Karen and Mrs. Pease, the subject of the other count of the indictment, identified the petitioner by a view at police headquarters through a one way mirror. Only the petitioner and three or four white police officers were present in the room at the time of this viewing. On October 18, 1962 Karen and Mrs. Pease separately picked the petitioner out of lineups in which there were five or six male negroes. Previous to this Karen had looked at two lineups without identifying her attacker. It was testified that he was not in these lineups.

The district judge held that, "considering the totality of the circumstances, the Court holds that the identification procedures were so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law." This conclusion is based largely on view of the petitioner in the one man show up by the victims of the rape.

Karen saw her attacker in the yard before he came to the door. She had a good opportunity to observe him during the telephone incident. He had no disguise and she observed him at close range as he disrobed her and committed the act of rape. He then wiped blood from his person with her blouse as described by her. He bound and gagged her and put her in the basement. She did not grasp the first opportunity to identify some one from a photograph or a lineup. Her viewing of the photographs and of the lineups give the appearance of one who knew for whom she was looking. And her experience with her attacker would justify the conclusion that she did know his appearance well enough to identify him.

Mrs. Pease was attacked and raped in her home on August 20, 1962. At about

eleven o'clock of that day Mrs. Pease answered a knock at her front door. She answered the knock but found no one there. As she returned to the back of her house she observed a negro male standing in the hallway in the middle of the house. When she asked what he wanted he grabbed her by the throat with his right hand and attempted to disrobe her with his left hand. A struggle ensued and the man threw her to the floor and tore off all her clothes. He then threw Mrs. Pease on the couch and forced her to have intercourse with him. Afterwards he put her in a closet and left.

Mrs. Pease, separately, made the same identifications that Karen did. We do not know that she saw any photographs or the lineups in which the petitioner was not present. She was confronted with him face to face as she saw him standing in the hall. She saw him at close range as he disrobed her and carried on the act of intercourse. He was not disguised. She saw him again as he put her in the closet. We think she had an opportunity to form an image of his features sufficient to identify him as she did.

We conclude that in the identification by both Karen and Mrs. Pease considering the totality of the circumstances the procedure was not unnecessarily suggestive and conducive to irreparable mistaken identification. The in-court identification did not rest alone on the one man confrontation. It has been held that the in-court identification is admissible if it has independent origin. See Fitts v. United States, 406 F.2d 518, 519 (C.A. 5); United States v. Banks, 426 F.2d 292, 293 (C.A. 6); United States v. Wade, 388 U.S. 218, 242, 87 S.Ct. 1926, 18 L.Ed.2d 1149. See generally, United States ex rel. Rutherford v. Deegan, 406 F.2d 217, 218, 219 (C.A. 2), cert. den. 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771; United States ex rel. Anderson v. Mancusi, 413 F.2d 1012, 1013 (C.A. 2).

The judgment of the District Court is reversed.

The petitioner having been released on his own recognizance pending appeal, it is ordered that he surrender himself to the Institution from which he was released. If he does not voluntarily surrender to the Institution within ten days, it is ordered that he be taken into custody by the proper authorities and returned to the Institution unless otherwise ordered by a Court of competent jurisdiction.

On Petition for Rehearing

PER CURIAM.

This case is before the Court upon petition for rehearing. One of the claims made in the petition is that the Court erroneously refused to consider a major issue presented to the Court by the briefs and oral arguments of the parties: "(T)hat appellee was denied due process of law by reason of the failure to appoint counsel to represent appellee for a period of over three months after his arrest."

Upon consideration of this issue, on the record in the trial, we conclude as did the district judge and for the reasons stated by him that the issue is without merit.

It is argued in the petition for rehearing that it is not the function of this Court to consider de novo the factual and legal issues determined in the District Court and that if the finding of the District Court is supported by substantial evidence, this Court is obligated to affirm that finding. The issue before the district judge was one of mixed law and fact and he made his determination from a review of the trial transcript. We are not bound by the district judge's conclusions of law or by his interpretation of the evidence in the trial transcript. The clearly erroneous rule is not applicable to such findings of fact.

The petition for rehearing is denied.

The appellee's "Motion to Withdraw Motion to Vacate Judgment and Dis-

miss Appeal or, in the Alternative Petion for Rehearing and to Substitute Therefore Petition for Rehearing" is granted.