UNITED STATES of America

v.

Calvin CLARK, Appellant.

No. 71-1587.

United States Court of Appeals,
Third Circuit.

Argued Nov. 15, 1971.

Decided Feb. 2, 1972.

Nancy Rosner, Rosner & Rosner, New York City (James P. McKenna, Jr., Pittsburgh, Pa., Edmund Allen Rosner, New York City, on the brief), for appellant.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa. (Samuel J. Orr, III, Kathleen Kelly Curtin, Asst. U. S. Attys., Pittsburgh, Pa., on the brief), for appellee.

Before ADAMS, GANEY and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This is an appeal from the denial of appellant's motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure, based on grounds of newly discovered evidence. Appellant claims this evidence shows that the prosecutor, knowing that it was false, failed to challenge or correct certain testimony of a

police officer.[1] The prior motions for judgment of acquittal and a new trial after a jury found him guilty of narcotic violations were affirmed by this court. 425 F.2d 827 (C.A.3, 1970), cert. denied 400 U.S. 820, 91 S.Ct. 38, 27 L. Ed.2d 48.

The testimony on which the prosecution relied in proving appellant guilty came mainly from two Pittsburgh, Pennsylvania police officers, William J. Seifer and John Robert Williams. They testified to having encountered appellant on the cold night of March 15, 1967, in a deserted, unlighted and debris-strewn area of Pittsburgh, and their subsequent involvement with two wax cartons containing a large supply of heroin. These cartons were inside a paper bag which they had seen in the appellant's possession. Immediately before the encounter these officers were cruising in a patrol car. Seifer was driving the car while Williams was sitting alongside him in the front seat.

At the trial of the case Officer Williams, on direct examination, testified that Officer Seifer and he had stopped appellant in this deserted area of Pittsburgh, in order to question him. Later, when he was confronted with his grand jury testimony which defense counsel secured as a result of his request to the court, he then stated that the appellant had stopped the patrol car in which he and Seifer were riding on that night, which statement conformed to his testimony before the grand jury. He further testified that while he reviewed his testimony before the grand jury with Assistant United States Attorney Zurawsky, he also testified he did not go over other testimony with Mr. Zurawsky in preparation for trial.

The pertinent parts of his testimony are as follows:

Q. You never discussed this case, then, and what you would testify to with anyone, is that correct?

A. I discussed it only to the extent of reading what I had said in the grand jury.

Q. Then you have read a transcript of some other testimony that you gave, is that correct?

A. Some other testimony that I gave?

Q. Yes.

A. No. This is the first time.

Counsel for the appellant never pursued this line of questioning as to what exactly was said in other testimony by way of discussion with Mr. Zurawsky, but turned to the grand jury notes in that regard.

During the pendency of his petition for a writ of certiorari, appellant engaged in conversation with Mr. Zurawsky and Officer Williams, a recording of which was made electronically by a device concealed on the appellant's person, and which was used as the basis for a hearing on his motion under Federal Criminal Rule 33 for a new trial. At the hearing on this motion, Mr. Zurawsky admitted to having a discussion with Officer Williams in preparation for appellant's trial for the reason that he wanted to know Officer Williams' recollection and what he had observed on the night in question and elicited from him what his testimony would be so he would know in advance of what he was capable of testifying. In these conversations, Williams and Zurawsky admitted that Williams reviewed his testimony with Zurawsky and Williams further admitted that appellant had never flagged down the officers' patrol car as he had testified to before the grand jury and on cross-examination. All of this, as has been indicated, was recorded electronically and admitted in evidence.

 Reviewing the testimony of a prospective witness by a United States Attorney is a common practice and is not improper, but assuming, arguendo,

---

1. Appellant also claims that the newly discovered evidence will confirm the fact that this same police officer knowingly testified falsely concerning his encounter with the police.

that Williams concealed this fact in response to a question by counsel for appellant, the record is far from clear that Zurawsky, the Assistant United States Attorney, knowingly failed to challenge it or correct it. At the hearing on the motion for a new trial, Zurawsky was very frank and we do not find in his testimony any acknowledgment, express or otherwise, that he was concealing something false by not rising and stating to the court the apparent incorrectness of Williams' statement.

It is apparent from a study of the testimony at the trial that appellant's counsel commenced his recross-examination of Williams intending to ascertain whether he had reviewed his testimony with the prosecution. However, in the course of his examination, when he discovered that Williams had gone over his testimony before the grand jury in preparation for trial, he apparently became aware that he had something much more important for his purpose in developing his defense and abandoned the opportunity for fully developing his original line of examination pertaining to the pre-trial review of Williams' court testimony. This sudden change in tack makes the record unclear. The trial judge noted in his memorandum and order:

> Prosecutor Zurawsky may have believed that Williams admitted "discussing" the Grand Jury with him, and that his discussion substantially answered the defendant's questions as to whether he went over this testimony with anyone. . . . It could hardly have been expected that after these few unclear questions and answers, that the prosecutor should have interrupted the cross-examination pertaining to the Grand Jury testimony and

inform the Court that he not only gave the Grand Jury testimony to Williams to refresh his recollection but that at some other time in the investigation of the case, he had gone over the facts of the case with the officers.

We are not convinced from the record that there was any knowing use of false testimony nor that the testimony was material to the factual issues directly involved and, at best, could only affect the credibility of the police officer.

While defense counsel relies on Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217, it is not controlling here because in that case the prosecution knowingly elicited a direct lie. At worst, what we have here is incorrect testimony given erringly but not wilfully upon a matter not material to the guilt of the appellant. In our opinion, this would not have rendered the trial fundamentally unfair and·denied the appellant due process. See Link v. United States, 352 F.2d 207 (8th Cir. 1965).

While we hold that Assistant United States Attorney Zurawsky's conduct here comes rather close to bordering on the improper since it is to be always insisted that any direct concealment of material testimony by an official of the United States Government must be considered as reprehensible and deserving of harsh sanctions, nevertheless, in view of a record not clearly to be understood as a wilful concealment of a material fact, we do not consider, in the context of this record, that Attorney Zurawsky's conduct was so unfair as to warrant the granting of a new trial.

The other contentions of the appellant are without merit.

The judgment of the lower court will be affirmed.