Calvin **CLARK**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

**Civ. A. No. 72–1036.**

United States District Court,
W. D. Pennsylvania.

Oct. 11, 1973.

---

9. We believe our holding here is consistent with the principles set forth in Roy, et al. v. Jones et al., 484 F.2d 96 (3rd Cir. 1973).

John M. Kish, Kish & Kish, Pittsburgh, Pa., for petitioner.

James A. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for the U. S.

## OPINION AND ORDER

MARSH, Chief Judge.

On May 27, 1968, petitioner, Calvin Clark, was charged with violating the narcotic laws, 21 U.S.C. § 174 and 26 U. S.C. § 4704(a), and was found guilty by a jury. His motion for a new trial was denied [1] and his conviction was affirmed on appeal.[2]

On November 2, 1970, petitioner filed a "Motion For Order to Show Cause Why Judgment of Conviction Should Not be Vacated" asserting therein that the prosecutor suppressed evidence helpful to the defense, and that Williams, a police officer, knowingly testified falsely at the trial. The moving papers and affidavit attached thereto state that this motion was made pursuant to Rule 33, Fed.R.Crim.P., rather than 28 U.S.C. § 2255. After a full evidentiary hearing, this motion was denied.[3] The denial of this motion was affirmed on appeal.[4]

1. United States v. Clark, 294 F.Supp. 1108 (W.D.Pa.1968).

2. United States v. Clark, 425 F.2d 827 (3d Cir. 1970), cert. denied 400 U.S. 820, 91 S. Ct. 38, 27 L.Ed.2d 48 (1970).

3. Opinion and Order, unpublished, filed May 18, 1971, at Criminal No. 67–111.

4. United States v. Clark, 454 F.2d 1056 (3d Cir. 1972).

On December 4, 1972, petitioner submitted a pro se "Motion Under Rule 33 F.R.Crim.P. and 28 U.S.C. § 2255 to Vacate Sentence and for a New Trial and/or in the Alternative an Appropriate Reduction of Sentence" asserting numerous conclusory allegations. Insofar as this motion was based on Rule 33 and Rule 35, it was untimely. With respect to § 2255, petitioner was ordered to supplement the conclusory allegations with specific sworn facts. Petitioner complied by filing an affidavit. The government was ordered to show cause why an evidentiary hearing should not be granted, but failed to show any reason. Counsel was appointed for petitioner and another evidentiary hearing was held. We think the motion should be denied.

The direct and circumstantial evidence submitted by the government at trial established that about 9:00 p. m. on March 15, 1967, two police officers cruising on Dahlem Street in a patrol car, with a red blinker light on top, first observed a man they identified as the petitioner walking on Railroad Street, a deserted area of the city frequented by litterers. When first observed, the petitioner was carrying a brown paper bag. Deciding to "check him out", the officers proceeded to a place where they turned the car around, drove back, and turned into Railroad Street where they had seen the petitioner. They accosted the petitioner who was running toward the car, but by then he had discarded the bag. It is a reasonable inference that petitioner discarded the bag because he had observed the patrol car in the vicinity. He told the police that the discarded bag had contained a sandwich he had purchased for his wife at the nearby Eat 'n Park restaurant and he had thrown it away. The petitioner and the police searched

for the bag but failed to find it. After "patting down" the petitioner the police decided not to arrest him for littering and after a conversation all parties left the area.

Since the ground was covered with recent snow, the police reasoned that petitioner had misled them and the bag could be found. Accordingly, they returned to the area about 10 minutes later, proceeded to trace petitioner's tracks in the snow and found the bag. In the bag were 347 glassine packets of heroin. Three of the packets bore the petitioner's fingerprints.

At the trial the police officers, William J. Seifer and John R. Williams, positively identified the petitioner as the man with the bag whom they accosted on March 15th and "patted down", and with whom they searched for the bag and conversed. On cross-examination, it was brought out that Officer Williams examined photographs at the "F.B.I. Photo Lab" and identified the picture of petitioner,[5] and both officers were shown one picture by Inspector McDaniels which they identified as petitioner and were subsequently told by the Inspector that the man in the picture was Calvin Clark.[6]

The petitioner was represented at the trial by two attorneys, both experienced as defense advocates and one was a former Assistant United States Attorney. At no time did the defense object to the admissibility of the in-court identification. No motion to suppress was made. No request was made for a *Simmons* hearing,[7] and no motion was made to strike the in-court identification. The motion for a new trial did not attack the in-court identification and it does not appear that any identification error was assigned on appeal. *Cf.* Pet-

---

5. Trial Tr., pp. 195–197.

6. Trial Tr., pp. 39–42, 194–195.

7. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). A Simmons hearing is conducted prior to an in-court identification to determine, first,

whether the pretrial identification has been violative of due process, and, second, if a violation is found, whether there is an independent source for the in-court identification. See: United States v. Hurt, 476 F.2d 1164, 1167 (D.C.Cir. 1973).

tett v. United States, 434 F.2d 105, 110 (6th Cir. 1970).

As a matter of trial tactics, the defense, on cross-examination, brought out the pre-trial photographic identification hoping to detract from the weight the jury might otherwise accord the in-court identification. *Cf.* Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968). Accordingly, the jury was instructed that if they found that the two policemen identified the petitioner from photographs shown to them and not from observing the petitioner at the scene, their identification testimony should be disregarded.[8]

At the evidentiary hearing, over six years after the event, each police officer testified that Inspector McDaniels had shown them several photographs separately and each picked one of them as being the man they observed at the scene and were then told his name wa Calvin Clark.[9] Moreover, it was brought out by petitioner that when the matter was under investigation, the prosecutor had been told by the narcotic agent assigned to the case, William H. Mattingly, that both officers had identified the petitioner from photographs shown to them at F.B.I. headquarters in Pittsburgh.[10] Also, each officer again positively identified petitioner and testified that his in-court identification was from what he observed of petitioner at the scene.[11]

■■ I find as a fact that the in-court identification of petitioner at trial and at the evidentiary hearing was from an independent source. I further find from the totality of circumstances that the out-of-court identification by each police officer of petitioner's photograph was not so unnecessarily suggestive and conducive to irreparable mistaken identification that it denied petitioner due process of law. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968); Stovall v. Denno,

388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

There was no substantial likelihood of misidentification. The police had need for utilization of photographic identification, and the photographic identification was reliable because these policemen, trained to observe and devoid of emotional factors, unlike some victims of a crime, had viewed the suspected litterer for a substantial period under light from the nearby Eat 'n Park restaurant, the headlights of their car, the snow reflection as they searched for the bag, and the dome light inside their car as the subject conversed with them through the car window. *Cf.* Neil v. Biggers, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L. Ed.2d 401 (1972).

Where a petitioner at trial and on appeal failed to challenge the validity of the identification evidence at least one Court of Appeals has held that he was foreclosed to present the due process question years later by a post-conviction motion for relief under § 2255, 28 U.S.C. Pettett v. United States, *supra*, 434 F.2d p. 110.

■ We think that after six years the burden was on the petitioner to show that the photographic identification violated his right to due process. United States ex rel. Darcy v. Handy, 351 U.S. 454, 462, 76 S.Ct. 965, 100 L. Ed. 1331 (1956). In this respect, he has failed.

*False Testimony*

Petitioner contends that (1) both officers testified falsely at trial that there was no vehicular traffic in the area during the time in question; (2) Officer Williams testified falsely at trial that petitioner flagged down the police officers in the patrol car; and (3) both officers testified falsely at trial that petitioner stuck his head in the window of the patrol car.

8. Trial Tr., pp. 644–646.

9. Transcript of hearing of April 4, 1973, pp. 45–53, 75–82.

10. Id., pp. 10–12.

11. Id., pp. 66–68, 81, 87–89.

The first contention was not a false statement in the context of the testimony.

The second and third contentions were not false statements of material facts. In his brief, petitioner states that "the Petitioner is not attempting to show perjury or prosecutorial misconduct", but that the conviction was tainted by the cumulative effect of this false testimony. We disagree with this conclusion.

■ With respect to the first contention, the officers testified that during the time the petitioner was in their presence and after they returned to the area about 10 minutes later and conducted a search for the bag, they observed no vehicular or pedestrian traffic in the vicinity of Dahlem and Railroad Streets. At the subsequent hearings, the officers testified that after they had conducted the search and found the bag and as they were proceeding on Dahlem Street, they observed a car pulling off and going down Hamilton Avenue. Obviously, there was no falsehood or even inconsistency in the testimony of the officers given at trial and that given in the subsequent hearings. At trial they responded to questions addressed solely to vehicular traffic in the vicinity of Dahlem and Railroad Streets *before they found the bag which petitioner had discarded.* At trial they were not questioned about vehicular traffic *after they found the bag and while they were leaving.* At trial they were not questioned about vehicular traffic on Hamilton Street. Moreover, Hamilton Street is not in the area where the action took place. The officers' testimony was truthfully given at trial and the presence of a car on Hamilton Street, brought out at the subsequent hearings, is at best newly discovered evidence which cannot be considered in a motion for § 2255 relief. *Cf.* Shaver v. Ellis, 255 F.2d 509 (5th Cir. 1958). At trial the officers were not questioned about vehicular traffic on Hamilton Street at any time during or after the events which took place in the littered area.

■ With respect to the second contention, at trial both officers testified that they stopped the petitioner in the littered area on Railroad Street. Officer Williams changed this version after being confronted with his grand jury testimony in which he stated that petitioner had hailed the police to stop. Thus the jury was aware of the inconsistent testimony of Officer Williams concerning a very immaterial fact. Moreover, this subject matter was previously considered and disposed of by this court and the Court of Appeals.[12]

■ The third contention that both officers testified falsely when they agreed that petitioner stuck his head inside the window of their car is likewise an immaterial matter (Trial Tr., pp. 31, 71).[13] At the evidentiary hearing the officers explained that petitioner did not have his whole head inside the car, but that his entire face was visible in the opening at the side window. The material point which was established was that this was one of several instances during the confrontation, and perhaps the best, when the officers had a good look at petitioner's facial features while they were illuminated by the dome light inside their car as they conversed with petitioner. The variance in the testimony at trial and at the evidentiary hearing if any, is more of a problem of semantics than one of substance and did not affect the fundamental fairness of the trial.

The important issue was whether the petitioner's facial features were illuminated by the dome light and not whether petitioner's head was inside or outside

---

12. Unpublished opinion of this court filed May 18, 1971, at Criminal No. 67–111, pp. 6–7, and United States v. Clark, 454 F.2d 1056 (3d Cir. 1972).

13. That petitioner "stuck his head inside the cruiser" was a colloquial characterization of petitioner's action originated by the prosecutor which was not challenged by the defense either at the time it was made or on cross-examination.

the car. Moreover, this was only one of the opportunities the officers had to observe the petitioner at the scene in order to establish that their in-court identification had sources independent of pretrial photographic identification.

With respect to the last two contentions of false testimony, we paraphrase what was stated by the Court of Appeals in United States v. Clark, 454 F.2d 1056 (3d Cir. 1972) at page 1058: At worst what we have here is incorrect testimony given erringly but not wilfully upon matters not material to the guilt of the petitioner. In our opinion, this did not render the trial fundamentally unfair and did not deny petitioner due process.

An appropriate order will be entered.

We take this opportunity to record our appreciation to John M. Kish, Esq. for the diligent services he rendered at our request on behalf of the petitioner at the hearing and in preparing his two briefs.