**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Richard BLACK, Defendant-Appellant.**

**No. 18656.**

United States Court of Appeals
Sixth Circuit.

July 18, 1969.

Thorley C. Mills, Cincinnati, Ohio (court appointed) for appellant; Taft, Stettinius & Hollister, Thorley C. Mills, Jr., Cincinnati, Ohio, on brief.

Henry L. Klein, Asst. U. S. Atty., Memphis, Tenn., for appellee; Thomas L. Robinson, U. S. Atty., Memphis, Tenn., on brief.

Before WEICK, Chief Judge, PHILLIPS, Circuit Judge, and McALLISTER, Senior Circuit Judge.

WEICK, Chief Judge.

Appellant Black was convicted by a jury in the United States District Court for the Western District of Tennessee, for robbing a federally insured Building and Loan Association of $2,192.60, and putting in jeopardy the life of a woman teller by the use of a pistol, in violation of 18 U.S.C. § 2113(d). The Loan Association was located on the outskirts of Memphis. Black was sentenced to twenty-two and one-half years' imprisonment, to be served in the Illinois State Penitentiary where he is presently serving concurrent sentences of 20 to 40 years and 75 to 100 years on his conviction in the Circuit Court of Cook County, Illinois, of the offenses of robbery of a supermarket in Chicago and the murder of a police officer who had responded to the robbery alarm.

This is a direct appeal from his judgment of conviction in the District Court for robbery of the Loan Association.

At his trial in the District Court, Black was positively identified in court as the robber by tellers Beulah Fritz and Grace Brown, and by cashier Homer Mitchell. Manager Lawrence Wade testified that Black resembled the robber. Black did not take the stand and offered no evidence. He rested his case at the close of the Government's case in chief.

The robber had entered the Association's office at around two o'clock in the afternoon. He first inquired about a loan and then drew a pistol and pointed it at Mrs. Fritz. He said, "This is a holdup and don't anybody move." He handed Mrs. Fritz a paper bag and told her to fill it. She obeyed by emptying one of the drawers of cash, and he then told her to open the next drawer. That drawer had nothing in it. He turned his gun in the direction of cashier Mitchell, and said, "Brother don't move." He said to Brown, Mitchell, and Wade, "You three lay on the floor with your face down," and they complied. He told Mrs. Fritz to go to the vault and get "two or three grand." Mrs. Fritz then went to the vault, but was able to obtain only some small change; she returned with the bag and handed it to the robber. She then lay on the floor and the robber left the building.

Mrs. Fritz testified that Black was in the Association's offices about twelve or thirteen minutes, and it could have been fifteen minutes. Wade estimated the time at eight to ten minutes, and Mitchell four or five minutes. In any event, Black was in the institution long enough to rob it of $2,192.60, and long enough for all of the employees to get a good look at him. And they paid attention to

him because he was not only looking at them but was pointing his pistol at them. Mrs. Fritz testified, "I will never forget his face."

When Mrs. Fritz was cross-examined as to what she told FBI agents, she denied that she ever expressed any doubt about her ability to identify Black. She further testified:

"Q Well, what did you tell them?

A I said I believed that I would recognize them [sic] if I saw them [sic] because I wouldn't forget his face and features, especially his eyes, because they were trained on me throughout."

On further cross-examination she testified:

"A Yes Sir, I would have known him any time.

Q You couldn't be positive you would have known him any time.

A Yes, I would."

Black wore no mask or glasses during the holdup, but wore glasses at the trial.

On cross-examination the Loan Association's employees admitted that they had been interviewed by FBI agents and were shown a number of photographs of individuals, including a picture of Black, and that they were unable to make a positive identification of Black from the pictures.

■ The fact that eye witnesses to an occurrence cannot make a positive identification of an individual from an examination of photographs of a number of persons, does not necessarily detract from the validity of their in-court identification where they see the individual in person. The weight to be given to their in-court identification is for the jury to determine.

Black contends that his constitutional rights were violated when Homer Mitchell and Grace Brown were sent to Chicago on January 28, 1966, by the Government, and entered a courtroom of the Circuit Court of Cook County during the hearing of a pretrial motion in a criminal case involving Black and his brother.

Mitchell and Brown were seated in the courtroom where there were numerous bailiffs and bystanders. Black, his brother, and three other men entered the courtroom. Mitchell and Brown had been requested by an FBI agent

"to look at these individuals to determine if either of these men were identifical [sic] to any of the photographs they had seen. I told these two to not speak between yourself if it is or is not don't discuss it."

Black was not in prison garb, but wore a black or dark suit and a white shirt. Black did not speak. Mitchell and Brown were in the courtroom for about thirty minutes.

Black also complains because Mrs. Fritz, at the request of the District Attorney, was in the courtroom in Memphis during a pretrial hearing of a motion in the present case, about two weeks before the trial started. She was not told that the defendant would be present; no names were mentioned and no one was pointed out to her. She was merely asked to "just sit in the courtroom and observe."

Black and his attorney were present in the courtroom but they had not been advised of the presence of Mrs. Fritz.

■ Black contends that the viewings by the witnesses at the pretrials in Chicago and in Memphis were without notice to him or his counsel, and that therefore the in-court identifications by all of the witnesses should have been excluded from the evidence. He relies on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), both decided June 12, 1967, and both cases involving lineups which the court held were illegal because of the absence of counsel for the defendants.

*Wade* and *Gilbert* are not applicable to the Chicago viewing because they were decided subsequent thereto and are not to be retrospectively applied. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

The question remains whether the Chicago viewing violated Black's right to due process. In order to taint an identification it must appear that the viewing was unnecessarily suggestive and conducive to irreparable mistaken identification. Stovall v. Denno, *supra*. In our opinion it was not.

The viewing was in a state courtroom in which a Judge was presiding. Defendant and his brother were present with their counsel. Court attachés and other people were in the courtroom. The Government witnesses were instructed only to observe the two defendants to determine whether either of them looked like any of the photographs which they had seen. Black was not pointed out by the FBI agents.

The robbery of the Building and Loan Association office had taken place in broad daylight. The witnesses were able to get a close look at the robber. He wore no mask and had no mustache or beard. He was pointing a gun at them and giving orders. He was positively identified in court by the two tellers and by the cashier. They were educated persons holding responsible positions with the loan association.

In United States v. Lipowitz, 401 F.2d 591 (3d Cir.1968), the witnesses of a bank robbery were requested to sit in a courtroom during the arraignment of a suspect—

"* * * to determine if they could recognize any of the men in the courtroom." *Id.* at 591.

It was held that this procedure was not unnecessarily suggestive.

In United States v. Quarles, 387 F.2d 551 (4th Cir.1967), the Court said:

"Martin had no right that he not be viewed. United States v. Wade, supra, 388 U.S. at 221, 87 S.Ct. at 1929, 18 L.Ed.2d at 1154. A lineup is not the only meas of identifying a suspect; an individual not in custody, as Martin, 'may be placed under surveillance—he may be viewed on the streets, entering or leaving his home or place of business, at places of amusement, or at any other place where he is not entitled to privacy.'" *Id.* at 556.

One man showups have been held not to violate due process under a variety of circumstances. Cline v. United States, 395 F.2d 138 (8th Cir.1968); Hanks v. United States, 388 F.2d 171 (10th Cir. 1968), cert. denied, 393 U.S. 863, 89 S. Ct. 144, 21 L.Ed.2d 131 (1968). See also Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968).

Whether or not due process has been violated depends on the totality of the circumstances. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968); Stovall v. Denno, *supra*. In our judgment the Chicago viewing was not so unnecessarily suggestive as to lead to an irreparable mistaken identification.

We reach the same conclusion with respect to the Memphis viewing by the teller, Mrs. Fritz. Like the Chicago viewing, it was in open court where a Judge was presiding. Defendant was present with his counsel, although neither had been advised of the presence of Mrs. Fritz, nor that she could observe defendant.

In *Wade* the lineup was conducted in the absence of defendant's counsel, who was not given notice of it. The persons in the lineup wore strips of tape such as were allegedly worn by the robber, and were required to repeat words allegedly uttered by him. The Supreme Court remanded *Wade* for a determination of "whether the in-court identifications had an independent source, or whether, in any event, the introduction of the evidence was harmless error * * *." *Id.* at 242, 87 S.Ct. at 1940.

The doctrine in *Wade* would have to be extended to cover the present case. This we are not prepared to do. We think no useful purpose would be accomplished by a remand to the District Court.

Mrs. Fritz made a positive identification in court. On cross-examination she was questioned at great length about the robbery, her statements to the FBI

agents, and her identification. She gave a detailed description of the robber, his height, age, color, appearance, and clothing. She identified him positively, and stated, "I will never forget his face." Considering her testimony and all the facts and circumstances, it is clear to us that Mrs. Fritz would have recognized and identified Black in court, even if she had not previously seen him at the pretrial hearing.

In our judgment, the weight to be given to the identification by Mrs. Fritz was for the jury, and not the Court, to determine.

One other point concerning identification should be mentioned. On the day of the trial, but prior to its commencement, the District Judge was conducting a hearing on a motion of the defendant for appointment of substitute counsel under the Criminal Justice Act. Black and his attorney were in the courtroom. Seven of the Government witnesses, some of whom had been subpoenaed, walked into the courtroom and sat down during the hearing of the motion. When their presence was brought to the attention of the District Judge, he immediately ordered an exclusion of the witnesses. This was a matter within his discretion. We find no abuse of discretion or prejudice to the defendant. Powell v. United States, 208 F.2d 618 (6th Cir.1953), cert. denied, 347 U.S. 961, 74 S.Ct. 710, 98 L.Ed. 1104 (1954).

During cross-examination of the bank employees the defense moved for production of their statements made to FBI agents. The Court conducted a hearing in the absence of the jury. The bank employees were questioned about their statements to the agents and whether they had seen the statements or adopted them. They had not signed any of the statements. Agents of the FBI also testified. All of the statements of Mrs. Brown were produced; one statement of Mrs. Fritz, two of Mr. Mitchell, and a portion of a statement of Mr. Wade, were produced. Those statements which were not ordered produced, the Court found, did not comply with the requirements of the Jencks Act, 18 U.S.C. § 3500. We find no abuse of discretion in the rulings of the Court. Simmons v. United States, *supra*.

We find no error in the refusal of the Court to appoint substitute counsel or to permit the defendant to obtain his own counsel on the eve of the trial. In our opinion Black had the effective assistance of counsel at his trial. United States v. Burkeen, 355 F.2d 241 (6th Cir. 1966).

The Court wishes to commend appointed counsel for appellant for the excellence of his brief and presentation.

Affirmed.