**Gordon M. ALLEN, Petitioner and Appellant,**

v.

**B. J. RHAY, Superintendent of the Washington State Penitentiary, Respondent and Appellee.**

**No. 24699.**

United States Court of Appeals, Ninth Circuit.

Sept. 11, 1970.

Rehearing Denied Oct. 22, 1970.

---

6. Mr. Justice Douglas said that in 200 years the Court had not been faced with the direct question. 399 U.S. at 15, 90 S.Ct. 1999.

Gordon M. Allen, in pro. per.

Ronald L. Hendry, Pros. Atty., Joseph D. Mladinov, Special Counsel, Tacoma, Wash., Slade Gordon, Atty. Gen., Olympia, Wash., for respondent-appellee.

Before BARNES, HAMLEY and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

Petitioner, serving time for a conviction in a state court of Washington in 1966 for the crime of robbery, petitions for his release by habeas corpus. The Supreme Court of Washington affirmed the conviction in State v. Allen (1967) 72 Wash.2d 42, 431 P.2d 593. Following an escape and conviction therefor he was adjudged an habitual criminal. Again the conviction was affirmed on appeal. State v. Allen, 75 Wash.2d 17, 448 P.2d 332 (1968).

On March 8, 1968, the Washington Supreme Court denied petitioner's application for relief in habeas corpus in its cause No. 40087. This proceeding involved only the robbery conviction referred to above. The United States Supreme Court denied certiorari. Allen v. Berry, 391 U.S. 924, 88 S.Ct. 1821, 20 L.Ed.2d 662 (1968).

Petitioner then filed a petition for a writ of habeas corpus in the district court below, case No. 3746, practically a word for word duplicate of No. 40087. The district court denied relief by a written memorandum without an evidentiary hearing. Petitioner does not contest the escape conviction resulting from the entry of a guilty plea. Petitioner's contentions are as follows:

1. That the police refused to honor a request to contact counsel immediately after arrest.

2. That identification witnesses from the scene of the crime, were seated on benches in the corridor outside the courtroom as petitioner was escorted handcuffed into the courtroom prior to an in-court line-up.

3. That the court permitted the jury to view an in-court line-up of the prosecution witnesses, but ordered that an in-court identification by defense witnesses be held in the absence of the jury.

4. That compulsory process for obtaining witnesses was denied, in that although a subpoena was issued for a de-

fense witness, the witness was late for the in-court line-up and the court refused a continuance.

5. That the court allowed the admission of pretrial line-up identification to bolster the courtroom identification.

6. That petitioner's "counsel should have been notified and counsel's presence required as a prerequisite to the out-of-court identification by picture, held prior to the out-of-court line-up."

7. That the state trial court did not grant a hearing on a motion by petitioner for the dismissal of an habitual criminal information, which was based upon petitioner's allegations that he was deprived of his right of appeal through the courts of the State of Washington "without being hampered from coercion from the prosecutor's office."

8. That the clerk of the Washington Supreme Court did not file or present to the court a motion made by petitioner for a writ of habeas corpus while the state court appeal was pending.

9. That copies of law material mailed to him by a friend outside the prison were not delivered to him while his appeal was pending.

The first six contentions are properly before us, having been raised in his habeas corpus proceeding No. 40087 to the Supreme Court of Washington. Contention No. 7 was raised in the same court in habeas corpus proceeding No. 39814, and denied. We consider it here.

■ Contention No. 8 was not presented to any state court. Petitioner so admits [Tr. p. 18]. Contention No. 9 was not presented to the state courts. Petitioner has not exhausted his State remedies, but the contention is easily disposed of. It consists of claims that petitioner did not receive copies of law material mailed to him and alleged to be needed in this habeas corpus proceeding below, No. 3746. An inspection as to what was alleged to be missing shows it to be a copy of pages 34, 35 and 36 from the case of Rabinowitz v. United States, 5 Cir., 366 F.2d 34. The case involves questions of jury qualifications

and has no bearing on petitioner's claim below or in the circuit. The contention is frivolous.

We proceed to consider petitioner's first seven contentions in detail.

### I.

■ We assume, for the purpose of decision, that the police refused to honor petitioner's request for counsel after his arrest. He was advised of his right to counsel at his arraignment the following day, and stated he intended to employ counsel. Petitioner does not contend he ever made any statements or confessions or that any were ever used against him in his trial. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, was decided June 13, 1966, after petitioner's trial that resulted in a conviction on April 8, 1966. *Miranda* does not apply retroactively. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The refusal to honor petitioner's request for counsel at his arrest, standing alone, is not a ground for relief.

Petitioner's contentions are tied in with an out-of-court identification by photo, and an out-of-court line-up. These matters will be considered later herein.

Suffice it to say that United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) apply only to those cases and future cases after the date of those decisions. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Appellant was convicted in 1966.

■ Petitioner must then rely not on the bare fact of lack of counsel at a line-up, but upon whether as stated in Stovall v. Denno, supra, " * * * the confrontation * * * was so unnecessarily suggestive and conducive to irreparable mistaken identity that he was deprived of due process of law." (p. 301–302, 87 S.Ct. p. 1972). The solution to this problem depends on " * * * the totality of the circumstances surrounding

* * * " the confrontation. (p. 302, 87 S.Ct. p. 1972).

Petitioner then has a heavier burden than the mere showing of lack of counsel as in *Wade* and *Gilbert*.

## II.

In the discussion of the following contentions of petitioner, it should be borne in mind that petitioner's first trial, which commenced in November 1965, resulted in a conviction, but a new trial was granted. There is no contention that the motion for a new trial was granted because of any of the matters complained of in this habeas proceeding. The second trial, commenced in March 1966, resulted in the robbery conviction and the sentence that is under attack in this proceeding. The petition for the writ and petitioner's brief is replete with reference to matters at the first trial. They are only significant insofar as they possibly had an effect on the second trial, which resulted in his conviction and the sentence for robbery. We have heretofore noted that thereafter petitioner plead guilty to an escape and was sentenced as an habitual criminal. We are not concerned with any problems concerning the second conviction.

■ Petitioner, in contention No. 2, alleged that at both trials, the prosecutor placed his identification witnesses, from the scene of the alleged crime, on benches in the hallway outside the courtroom to view petitioner when he was escorted to the courtroom handcuffed by an armed deputy sheriff prior to the in-court line-up identification parade.

The Supreme Court of the State of Washington considered petitioner's contention. It based its decision on alternate grounds; (1) "No rights of Petitioner were violated by his having been seen in the courthouse corridor in handcuffs by identification witnesses immediately prior to their testimony at trial"; and (2) an affidavit of the prosecuting attorney stating the witnesses were placed in another room or called into court when petitioner was already there.

We think the first ground for the court's decision was correct and need not consider the alternative ground, the reliance on the affidavit.

This was not a line-up as discussed in *Wade* and *Gilbert,* supra, which in any event do not apply. It was an opportunity for witnesses to view petitioner if they chanced to notice him.

We search the record in vain for any allegation that the witnesses at either trial *actually observed* petitioner in the hallway. Neither his petition nor his "Supplementary and Additional Information Brief" contain such an allegation.

Petitioner at the trial had an opportunity to make a record concerning the various contentions he has presented. This could have been done by his testimony in chief, by other witnesses called by him, or by cross examination of the state's witnesses as to whether they observed the petitioner in the hallway as he was escorted to court, and as to the facts concerning the out-of-court line-up and the out-of-court photographic identification which we discuss later.

As far as we can ascertain from the record, none of these facts were developed at the trial by petitioner. In his petition, he refers to his "inability to reconstruct at trial effectively any unfairness that occurred at the pretrial line-up." In his brief he states he "was hesitant to testify in his own behalf because of prior convictions and therefore unable to reconstruct the prejudices and unfairness that occurred at the illegal, compelled pretrial line-up * * ".

Regardless of petitioner's excuses there was available to him the opportunity to examine witnesses as to the photographs, the line-ups, and what observations the witnesses relied upon. As shown above, petitioner concedes no record was made. Nor can we find any fact alleged to show the surrounding circumstances.

Witnesses at the courthouse for a pending trial are within the control of the trial judge. Many courts have witness rooms where witnesses may wait.

Other courts do not have such facilities. Some are so crowded it is impossible to segregate witnesses, jurors and defendants as they await the opening of the court. Petitioner alleges no fact to show that facilities were available other than the benches in the hallway.

Moreover, as we show later, the identification witnesses had several opportunities to see petitioner before the incident in question. The additional view as petitioner came to the courtroom, if the witnesses saw him, has not been shown to have appreciably aided their identification.

■ Finally, we believe the question of where prospective witnesses should be seated or held prior to their testimony in court rests in the sound discretion of the trial court. No abuse of that discretion has been shown. See United States v. Black (6 Cir. 1969) 412 F.2d 687, 691.

Petitioner further alleges that at the first trial, in November 1965, the court ordered petitioner to be seated in the audience and the state's identification witnesses were to attempt to identify him; that before petitioner, who was wearing a yellow sweater, could move from the counsel table and be seated among the members of the audience, the prosecutor went to the hallway and escorted a state identification witness into the courtroom; that the witness viewed petitioner seated at the counsel table during objections and argument which followed. The witness was removed, petitioner sat in the audience, the witness was returned to the courtroom and then identified petitioner as the man in the yellow sweater.

Following the guilty verdict, petitioner was granted a new trial. No similar incident occurred at the second trial, which began on March 9, 1966, wherein petitioner was convicted and sentenced for the robbery conviction he now attacks.

There were three identification witnesses. Prior to the second trial all the witnesses (1) had seen the petitioner commit the robbery and so testified; (2) had seen petitioner at the line-up on July 2, 1965; (3) prior to the line-up, according to petitioner's allegations, had seen photographs of petitioner and identified him from photos; (4) had seen an in-court line-up which occurred after the "yellow sweater" incident; and (5) had seen petitioner in the courtroom when each witness testified at the first trial.

Petitioner points out in his brief that his first conviction was set aside on motion for a new trial and the case retried. He states, "During the period of approximately one year (July 1, 1965 to March 1966) appellant was viewed by these witnesses at least thirty times." His reference is to the pretrial identifications and his days in court on the first and second trial. But petitioner moved for and was granted the new trial. On the second trial there was no way to erase the unavoidable fact that the witnesses, in testifying, had seen him in the courtroom at the counsel table during the first trial.

■ It seems unlikely that the "yellow sweater" incident occurring in the courtroom, appreciably added anything to the final identification of petitioner by the witness at the second trial of the case. Petitioner had been present during all of the first trial and the witnesses of course could view him as each testified. This view was more extensive than the brief view of petitioner at the time of the "yellow sweater" incident. The question is whether the incident tainted the identification at the second trial, not the first trial. When we evaluate petitioner's claim "in light of the totality of surrounding circumstances," (Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968)), the claim must be rejected. The incident was not "so unnecessarily suggestive and conducive to irreparable mistaken identity that he was denied due process of law." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

### III.

Petitioner's contention No. 3 was that the court deprived him "of the right to have the jury at his trial, view and hear the entire proceedings, violating petitioner's right to a fair trial and due process." Petitioner further states that the trial court arranged for an in-court identification line-up procedure whereby the petitioner and his co-defendant and three other persons were to be seated in chairs or standing behind the counsel table. Then the state's identification witnesses were to be brought into the courtroom and attempt to identify the two defendants. Petitioner alleges an identical "procedure was arranged for the witness for the defense with its identification witness from the scene of the crime." [sic]

■ The petitioner alleged that the procedure for prosecution witnesses was conducted in the presence of the jury and that the procedure for defense witness was conducted in the absence of the jury. However, petitioner does not allege in his petition or his "Supplementary and Additional Informative Brief" whether this occurred at the first or second trial.

Petitioner misses the point of controlled line-up identification procedures with counsel present, whether in or out of court. The purpose is to test the witness under proper conditions, as to his identification. If the prosecution witness fails to identify or is uncertain, this inures to the benefit of the defense.

On the other hand such testing of a defense witness is not to the advantage of the defendant. We see no prejudice to the petitioner in the fact that the jury were excluded when the in-court line-up was conducted for defense witnesses.

The Supreme Court of the State of Washington had this claim before it. It states "courtroom identification tests, like other courtroom demonstrations or experiments, rest within the sound discretion of the trial court. Petitioner's rights were not violated in any way in

the matter. See, State v. Riley, 126 Wash. 256 at 266–269, 218 P. 238 (Aug. 31, 1923)." Cf. United States v. Black, supra.

■ An in-court line-up or in-court identification, with counsel present is not within the rule of *Wade* or *Gilbert,* even if they were retroactively applicable to this case.

### IV.

■ Petitioner's contention No. 4 was that he was denied compulsory process for a defense witness. He alleges that a defense identification witness, although subpoenaed, was not present when his name was called and that the trial court denied a continuance. The witness had been subpoenaed to appear in the in-court identification proceeding, referred to heretofore.

We are not told whether the witness appeared later or whether he did or did not testify. The granting of the continuance rested in the sound discretion of the trial judge. No prejudice has been shown.

### V. VI.

We consider here both contentions No. 5 and No. 6. Petitioner's contention No. 5 is that the trial court allowed the admission of evidence of a pretrial line-up to bolster the courtroom identification. Petitioner's claim No. 6 is that "counsel should have been notified and counsel's presence a prerequisite to the identification by picture of petitioner prior to the pretrial line-up." In his petition he specified one witness (unnamed) testified that the witness identified petitioner from a group of photographs brought to him prior to the pretrial line-up. In his brief he states "various witnesses" were shown photographs of petitioner.

Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) involved use of photographs for identification. The Court said, in referring to identification by photograph, "We are unwilling to prohibit its em-

ployment, either in the exercise of our supervisorial power, or, still less, as a matter of constitutional requirement. Instead we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (p. 384, 88 S.Ct. p. 971).

Various circuits have considered the contention that the right to counsel at a line-up, held to exist in *Wade* and *Gilbert*, should be extended to a case involving an out-of-court identification by use of photos.

The following cases hold that *Wade* and/or *Gilbert* do not apply to an out-of-court photographic identification. McGee v. United States (10 Cir. 1968) 402 F.2d 434, 436, cert. denied 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220; United States v. Robinson (7 Cir. 1969) 406 F.2d 64, 66–68; United States v. Bennett (2 Cir. 1969) 409 F.2d 888, 898–900; Rech v. United States (10 Cir. 1969) 410 F.2d 1131, 1132.

United States v. Ballard (5 Cir. 1970) 423 F.2d 127, 131, summed up the matter,

> "We follow our brethren of the Second, Seventh and Tenth Circuits in holding that *Gilbert* and *Wade*—neither through *Simmons* nor outside *Simmons*—require the counsel for an accused be present at the time of any out-of-court photographic identification, regardless of whether the accused is in custody or not * * *".

■ We agree and follow the Second, Fifth, Seventh and Tenth Circuits.

Petitioner seems to say that the supposed hallway identification, the out-of-court line-up and the out-of-court photographic identification tainted the actual in-court testimony of the witnesses who identified the petitioner as participating in the robbery. He was familiar with in-court and out-of-court line-ups as shown by his suggestion that there be conducted an in-court line-up of both prosecution and defense witnesses discussed hereafter. We have discussed his failure to make a record.

Petitioner's chief complaint about the out-of-court line-up was that he was denied counsel. He asserts that the fact of his request for counsel at the line-up and the fact that he was forced to participate, directed attention to him. Since the confrontation was prior to *Wade* and *Gilbert* he cannot rely on these cases. Stovall v. Denno, 388 U.S. 293, 296, 87 S.Ct. 1967, 1969, 18 L.Ed.2d 1199 (1967).

■ Nor has he alleged any other facts about the line-up that were suggestive for the purpose of identification. He contends that at the line-up he was identified as the robber of a different tavern than the one involved in his arrest. There is no merit to this contention. His allegations fail to show that viewing the "totality of the circumstances," the "confrontation * * * was so unnecessarily suggestive and conducive to irreparable mistaken identity that he was deprived of due process of law." Stovall v. Denno, supra, p. 302, 87 S.Ct. p. 1972.

### VII.

■ Petitioner's contention No. 7 was that he was deprived of his right to appeal through the courts of the State of Washington "without being hampered with coercion from the prosecutor's office * * *". Specifically he claims:

(1) The prosecutor's office obtained a 30 day continuance to file "their return and answer to petitioner's appeal No. 38885 without informing petitioner."

(2) That the state's brief was filed on May 26, 1967, 63 days after the expiration of the 30 day extension.

(3) That during the 63 day period— on April 11, 1967, attorneys for petitioner and his co-defendant visited them in jail; that the attorney for his co-defendant stated to petitioner, that if he

would abandon his appeal the state would dismiss an habitual offender information pending against him; that if he did not abandon his appeal and succeeded on the appeal the prosecutor was going to recharge petitioner with three prior felonies, which had been previously dismissed, and convict petitioner as an habitual criminal.

The contention was raised before the Supreme Court of Washington in habeas No. 39814 and in his appeal from the robbery conviction.

To state the contention is to show its frivolity. The appeal progressed to decision of affirmance cited above. Petitioner has shown no prejudice from the delay. In the conversation related above, the attorney was only performing his duty in relating to his client, in petitioner's presence, a "deal" proposed by the prosecutor. Petitioner did not accept. If the prosecutor's proposal was an attempt to coerce, petitioner was unaffected. He did not accept the proposal.

The judgment is affirmed.