**Elester Howard NASH, Jr. 122142**

v.

**STATE OF MARYLAND.**

Civ. No. 73–141–K.

United States District Court,
D. Maryland.

Dec. 28, 1973.

Elester Howard Nash, Jr., pro se.

Francis B. Burch, Atty. Gen. of Maryland, John P. Stafford, Jr., Alexander L. Cummings, Asst. Attys. Gen. of Md., for respondent.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

Nash, presently confined in the Maryland House of Correction, was convicted of four charges of uttering counterfeit checks after a non-jury trial on August 7 and 8, 1972 in the Circuit Court for Dorchester County before Judge C. Burnam Mace. Judge Mace sentenced Nash to serve six years for each of the four offenses, the four six-year sentences to run concurrently. Nash appealed to the Court of Special Appeals of Maryland, during the pendency of which appeal he

also filed a habeas corpus petition in this Court. That petition was denied by this Court without prejudice because Nash had failed to exhaust his available state remedies.

After the Court of Special Appeals of Maryland affirmed Nash's conviction, Nash unsuccessfully sought certiorari review in the Court of Appeals of Maryland. That quest was denied. Thereafter Nash filed the within, that is, his second habeas corpus petition in this Court, in which he contends:

(1) The State of Maryland failed to establish his guilt beyond a reasonable doubt; and the Court erred in supplying by conjecture an evidentiary fact essential to his conviction.

(2) The prosecution failed to introduce into evidence an FBI report favorable to him.

(3) After the forgeries had been discovered, the police showed the victims a set of photographs of known "bad check artist[s]"; those victims identified Nash as " 'being closest to the person who cashed the checks' "; and the police then arrested Nash and placed him in a line-up in which he was identified by one eyewitness as the man who had caused her to cash a bad check. Construing his allegations most broadly, Nash may be claiming that the witness did not identify him as the man whose picture was shown to her prior to his arrest; or that his identification at the line-up was tainted by his pre-arrest photographic identification; or that his identification at trial was tainted by the earlier photographic identification and/or line-up identification.

The Court of Special Appeals of Maryland (at p. 1 of its opinion affirming Nash's conviction, No. 597 (May 23, 1973) (unreported)) wrote, *inter alia*:

On March 4, 1972, a series of bad checks were passed on retail merchants in the city of Cambridge. All of the checks turned out to be forged payroll checks of the James Construction Company. All were made in the amount of $96.41 to the order of Michael L. Simms, ostensibly on March 3, 1972.

The date, the amount of the check, and the name of the payee were all typewritten. The checks were all ostensibly endorsed by Michael L. Simms.

Through the Maryland State Police, the Cambridge Police Department obtained photographs of a number of known bad check passers. The four victims in the four cases at bar were each shown eight photographs. Each identified a photograph of the appellant as the person most closely resembling the utterer of the respective fraudulent checks. The appellant was arrested in Baltimore and brought to Cambridge for a lineup, which was held on April 17, 1972. One of the victims, Judy Bramble, an employee of Sears, Roebuck & Company, picked the appellant out of the lineup. * * *

Four witnesses identified Nash during his trial as the person, posing as Michael L. Simms, who passed off forged checks on retail merchants. Miss Bramble recalled that on March 4, 1972 she cashed a check drawn on the James Construction Company in the amount of $96.41 for a man who identified himself as Michael L. Simms. She testified that she observed Simms for a total of ten minutes; six minutes while she was cashing the check and four minutes while she watched his movements in the store from a balcony. She positively identified Nash as the man who cashed the check. (Trial Transcript pp. 37–49).

Mrs. Audrey Willey, the manager of a Woolworth's Department Store, testified that on March 4, 1972 she cashed a check in the amount of $96.41 drawn on the James Construction Company for a man purporting to be Michael L. Simms. She stated that while cashing the check she "was looking him right in the face" for a period of from four to five minutes. (Trial Transcript pp. 61–62). She also made a positive identification of Nash as Michael L. Simms (Trial Transcript pp. 55–62).

Mrs. Mary Lou Jackson, the manager of a Quik Shop in Cambridge identified Nash as the man who, on March 4, 1972, while using the name of Michael L.

Simms, cashed a check on the James Construction Company in the amount of $96.41. Mrs. Jackson testified that she watched Simms for a full ten minutes while he was in her store. (Trial Transcript pp. 69–80).

Mr. Gene Stack, the supervisor of a Montgomery Ward store in Cambridge stated that on March 4, 1972, Nash, using the name Michael Simms, had purchased a can opener in that store with a check identical to those cashed by Miss Bramble, Mrs. Willey and Mrs. Jackson (Trial Transcript pp. 113–15; *see also* pp. 12, 13 and 16).

Nash attempted to refute the above-summarized evidence with a flat denial of his guilt (Trial Transcript pp. 181–83); with the testimony of a handwriting expert who stated her opinion that Nash's handwriting was dissimilar to the endorsements on the checks (Trial Transcript pp. 139, 154); and with six alibi witnesses who placed him in Baltimore City throughout the entire day of March 4, 1972 (Trial Transcript pp. 194 et seq.). Judge Mace, as the trier of fact, specifically stated his acceptance of the testimony of the State's witnesses, his rejection of the alibi testimony and his conviction "beyond a reasonable doubt of the guilt of the Defendant in this case" (Trial Transcript pp. 235–36).

Nash was convicted of uttering a forgery and not of forgery itself. Judge Mace found beyond a reasonable doubt that the instruments were false, that they were uttered by Nash as true, that Nash knew them to be false and that he intended to defraud those who cashed the checks (Trial Transcript pp. 233–36). Specifically, Judge Mace stated:

> Now, the question of when, where or by whom these endorsements on the checks or the signatures on any part of them were forged, I don't think need be proven in a charge of uttering. * * * [Trial Transcript p. 234.]

On appeal, the Court of Special Appeals of Maryland wrote (at pp. 2–3):

> There can be no question but that the evidence showed directly facts from which the trial judge, sitting as the fact finder, could fairly be convinced, beyond a reasonable doubt, of the appellant's guilt. * * *

In the light of that record, Nash cannot succeed in this case in establishing lack of sufficient evidence as a ground for habeas corpus relief. In a federal habeas corpus setting far less evidence than was present in this case will satisfy constitutional requirements. Grundler v. State, 283 F.2d 798, 801 (4th Cir.), cert. denied, 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960).

Nash's allegation that the prosecution failed to introduce into evidence an FBI report favorable to him in violation of the commands of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is raised by him in this case in this Court for the first time. Accordingly, Nash has failed to exhaust his state remedies in connection with that contention. Thus, this Court could refuse to entertain that contention unless and until Nash shall have presented it in the state courts. 28 U.S.C. § 2254; Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); Ganger v. Peyton, 379 F.2d 709 (4th Cir. 1967). The principle of exhaustion of state remedies, however, is a matter of comity rather than jurisdiction. Picard v. Connor, *supra,* 404 U.S. at 275, 92 S.Ct. 509; Wright v. Maryland Penitentiary, 429 F.2d 1101 (4th Cir. 1970). Thus, exhaustion is not a necessary antecedent to this Court's power to dismiss a patently frivolous claim such as Nash has stated. Jenkins v. Fitzberger, 440 F.2d 1188 (4th Cir. 1971).

*Brady, supra* and its progeny forbid the Government from suppressing exculpatory evidence.

> [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. [*Brady, supra,* 373 U.S. at 87, 83 S.Ct. at 1197. *See* Moore v.

Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).]

 The prosecution, however, is not required to introduce evidence that is equally available to the defense. The record in this case discloses that Nash's defense counsel was aware of the FBI report and that he alerted Judge Mace to the gist of its content:

> MR. FARNELL: Now, Your Honor, we have exhausted—well, there is one more thing I want to put in evidence and that is the record of the Federal Bureau of Investigation. I was going to ask to introduce the FBI —proffer what it says. We don't have a jury. That the checks which are in evidence have eight latent fingerprints and none of them belong to Mr. Nash. [Trial Transcript p. 185.]

Thus, Nash's *"Brady-type"* allegation is patently devoid of merit and is hereby rejected.

 There remains Nash's contentions relating to identification. The Court of Special Appeals of Maryland noted (at p. 1) that Nash "does not challenge the propriety either of the lineup or of the photographic viewings". However, testimony at the trial, and colloquy among Court and counsel during trial (*see, e. g.,* Trial Transcript pp. 13, 18, 20, 24–25, 26–29, 31–37, 52–53, 55, 74–76, 113) amply support Judge Mace's statements (Trial Transcript pp. 233–34) that—

> * * * I am very much impressed with their [the four eyewitnesses'] testimony. They had ample opportunity to observe the Defendant. They each gave a description to the police.
>
> They, or some of them, selected photographs when they were shown a series of eight photographs. That was done without hesitation. There was identification at the lineup without hesitation, and, apparently, from what I observed from the testimony and photographs, the lineup was extremely fair. The Defendant was represented by counsel. Number four, they identified the Defendant in Court. I

am impressed with their testimony. I accept their testimony.

In United States v. Williams, 436 F.2d 1166, 1169 (9th Cir., 1970), the Court wrote:

> 2. *Williams' request for an in-court lineup.*
>
> Before the start of trial, defense counsel requested an "in-court lineup," which the trial judge denied. In cases such as this, where the question of guilt or innocence hangs entirely on the reliability and accuracy of an in-court identification, the identification procedure should be as lacking in inherent suggestiveness as possible. Yet that is often not the case. When asked to point to the robber, an identification witness—particularly if he has some familiarity with courtroom procedure—is quite likely to look immediately at the counsel table, where the defendant is conspicuously seated in relative isolation. Thus the usual physical setting of a trial may itself provide a suggestive setting for an eyewitness identification.
>
> Because of such potential suggestiveness, some trial judges have granted defense requests to place the defendant in an in-court lineup, or to seat the defendant in the courtroom audience, before and during the testimony of the prosecution's identification witnesses. See, *e. g.,* Allen v. Rhay, 9 Cir., 1970, 431 F.2d 1160; United States v. Moss, 3 Cir., 1969, 410 F.2d 386, 387. Such arrangements are desirable efforts to ensure fair trials. But we cannot find any support for the assertion that a defendant has a right to such an arrangement whenever he requests it. Like the seating arrangements for prospective witnesses, Allen v. Rhay, *supra* (at 1164), the procedure for in-court eyewitness identification is left to the trial judge's discretion. Absent abuse of that discretion resulting in procedure "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to amount to a denial of due process of law, Stovall v. Denno, 1967, 388 U.S. 293, 302, 87

S.Ct. 1967, 1972, 18 L.Ed.2d 1199, we should not question the trial judge's ruling. Williams has failed to show any such abuse of the judge's discretion in this case.

In the instant case each in-court identification was clear and unequivocal. Nash appears to argue that Miss Bramble, at his line-up, did not identify him as the man who cashed the bad check but rather identified him as the man whose picture she had seen; and that the showing of photographs tainted both the line-up and the in-court identifications. But any such contentions are without merit. At trial, Corporal John Ruark, Chief Investigator of the Cambridge City police department, testified that there were six individuals in the line-up; that all were dressed alike, all were approximately the same size, all were white, and all were of approximately the same age; and that an attorney, who was present, representing Nash, did not object in any way to the manner in which the line-up took place. Pictures were taken of the line-up which were shown to Nash's trial counsel, and a transcript of the line-up was made (Trial Transcript pp. 22–26). Although Nash's trial attorney made a general objection that the line-up was tainted, there is no evidence supporting that contention (Trial Transcript pp. 26–27). As to Miss Bramble's identification at the line-up, she testified at trial as follows (Trial Transcript p. 53):

Q Now, there has been some testimony of a lineup. Were you present at that lineup?

A Yes, I was.

Q How long did it take you to make the identification?

A A very short time.

Q Does 25 seconds sound right, about half a minute?

A I looked them over very carefully. I don't think I would have done it that fast, although, I looked at it and I immediately knew. I did look at each one carefully and then I told them which one.

Q You had never seen any of them before?

A No, sir.

Although the witness did not state that she was identifying Nash as Nash, there is no suggestion that she was identifying him as the man in the photograph. Nash's bald allegation, unsupported by facts, falls far short of establishing a sufficient basis for habeas corpus relief. Whitley v. Steiner, 293 F.2d 895 (4th Cir. 1961). *See* Sanders v. United States, 373 U.S. 1, 19, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

Corporal Ruark's testimony reveals that the Cambridge police, in response to the large number of identical fraudulent checks that had turned up, sent out a bulletin to the Maryland State Police who, in turn, sent out a bulletin describing the modus operandi to all points on the East Coast. The reports that came back listed several individuals, and the police obtained photographs of them. (Trial Transcript p. 13). While the police were culling this data, they interviewed the four eyewitnesses who later testified at trial. Those four persons gave the police similar descriptions of Michael L. Simms (Trial Transcript p. 18). Once the police had the photographs in hand, they returned to the four eyewitnesses and showed them a folder containing eight pictures of eight individuals.[1] Each victim picked the picture of Nash as the one most resembling Michael L. Simms (Trial Transcript pp. 20, 29). The police then arrested Nash and held him for a line-up at which he was identified by Miss Bramble, the only one of the eyewit-

---

1. A suspect has no right to be represented by counsel at a photographic identification. United States v. Canty, No. 13,793 (4th Cir., Aug. 3, 1970) ; United States v. Collins, 416 F.2d 696 (4th Cir., 1969), cert. denied, 396 U.S. 1025, '90 S.Ct. 601, 24 L.Ed.2d 519 (1970) ; United States v. Marson, 408 F.2d 644 (4th Cir., 1968), cert. denied, 393 U.S. 1056, 89 S.Ct. 695, 21 L.Ed.2d 698 (1969). *See also* United States v. Long, 449 F.2d 288, 300 (8th Cir., 1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1206, 31 L.Ed.2d 247 (1972) ; United States v. Williams, 436 F.2d 1166, 1169 (9th Cir., 1970).

nesses who could attend. Later, at trial, all four witnesses identified Nash as Michael L. Simms.

There is no basis in the record to conclude that Miss Bramble's line-up identification of Nash was in any way tainted by any of the procedures used at the photographic showing. Additionally, her in-court identification was clear and unequivocal. This is not a case in which any pre-trial identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). In summary, Judge Mace's conclusions with regard to identification, set forth at p. 804, *supra,* are well supported. While Nash has not exhausted his state remedies in connection with alleged identification errors or insufficiencies, the record reveals that his claims of the same are without merit. Accordingly, they are hereby denied.

Nash's within petition for habeas corpus relief is hereby denied. It is so ordered, this 28th day of December, 1973.

The Clerk is directed to mail copies of this Memorandum and Order to Nash and to Alexander L. Cummings, Esq., Assistant Attorney General.