### UNITED STATES of America

v.

### Stephen Richard CHAPMAN et al.

### No. CR-1-80-39-1-2.

United States District Court,
S. D. Ohio, W. D.

Sept. 16, 1980.

See also, D.C., 501 F.Supp. 698.

Terry W. Lehmann, Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff.

Matthew J. Crehan, Hamilton, Ohio, for defendants.

### DECISION ON DEFENDANT'S MOTION TO SUPPRESS IDENTIFICATION TESTIMONY

SPIEGEL, District Judge:

This matter came on for hearing on September 4, 1980 to consider defendant's motion to suppress identification testimony. A similar motion had been filed by defendant, Robert Scott Chapman, in these proceedings and a joint hearing was held on both motions. *See* Decision in *United States of America v. Chapman*, 501 F. Supp. 997, filed contemporaneously herewith. Upon consideration of the testimony and the exhibits, and the arguments of counsel, it is the opinion of the Court that part of defendant's motion is well taken, and it will be granted in part and denied in part, for the reasons set forth below.

The testimony at the hearing disclosed that only two of the four bank employees selected defendant Stephen Richard Chapman's photograph from the photo spread on June 6, 1980, when it was presented to them by the Special Agent of the FBI. At the

hearing on September 4, 1980 on this motion, none of the bank employees selected this defendant's photograph from the photo spread. Each of the two witnesses who had previously selected the picture of this defendant, identified a different picture, photo number seven, in the photo spread, in Court. When questioned as to their misidentification, each stated she picked number seven based on her recollection of the perpetrator at the time of the robbery.

Defendant's motion specifically provides: "Defendant, Stephen Richard Chapman, by and through counsel, respectfully moves this Court pursuant to Criminal Rule 12(b)3, to suppress the identification of the defendant by all witnesses shown a photo spread including the defendant's picture. * * * "

The inability of the witnesses to identify this defendant at the hearing on the motion to suppress raises two questions for the Court's determination.

1) Whether the Government should be allowed to introduce evidence of pretrial photographic identification of the defendant at the trial; and

2) Whether the Government should be permitted to attempt an in–court identification of the defendant by these witnesses.

We conclude that because the witnesses who selected defendant's photograph from the array in June were unable to do so at the hearing on the motion to suppress in September, the reliability of their prior photographic identification is questionable and, therefore, such testimony is inadmissible. However, we conclude that the motion should be overruled as it applies to an in–court identification at trial based on the witnesses' recollection of the perpetrator's appearance at the time of the robbery.

■ We again observe that there is no testimony to support the conclusion that there was any impermissible suggestion in the procedure followed by the Government investigators through the use of the photo spread. Nonetheless, the failure of the witnesses to correctly identify the defendant from the photo spread at the suppression hearing indicates that their prior identification may have been incorrect.

The Supreme Court in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) noted that even if the police followed the most correct photographic identification procedures, there is still some danger of misidentification. 390 U.S. at p. 383, 88 S.Ct. at p. 970. Although, in the instant case the FBI followed the procedures with the defendant's photograph deemed by the Supreme Court to be the most correct, there still remains some inherent danger of misidentification simply from the use of photographs to identify the defendant. Thus, when determining whether evidence of pretrial photographic identification is admissible at trial, the courts look not just to the suggestiveness of the procedures or lack thereof, but also to the reliability of the identification determined by considering the factors set out in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite*, 432 U.S. 98 at 114, 97 S.Ct. 2243 at 2253, 53 L.Ed.2d 140 (1977). As stated by the *Manson* Court, reliability is the "linchpin" in determining the admissibility of pretrial identification testimony. 432 U.S. at 114, 97 S.Ct. at 2253. The basis for hinging admissibility of such testimony on the reliability of the witness' identification, rather than the suggestiveness of the procedures used, is to avoid the primary evil of photographic identification procedures which is a "substantial likelihood of misidentification." *Simmons v. United States, supra*, 390 U.S. at p. 384, 88 S.Ct. at p. 971. Clearly, with the witnesses' misidentification of the pictures of defendant, Stephen Richard Chapman, at the suppression hearing, such a likelihood has become a certainty.

■ In considering the inherent danger of incorrect identification of a perpetrator from a photo array which has been conducted even under the most correct procedures, *Simmons v. United States, supra*, coupled with the inability of the two witnesses to identify the defendant's picture at the suppression hearing, we find the evidence of

these witnesses' prior identifications of the defendant to be too unreliable to be admissible as evidence of his identity as one of the participants in the bank robbery.

 It is this Court's opinion, however, that the exclusion of the pretrial photographic identification of defendant, Stephen Richard Chapman, does not militate against the Government attempting an in-court identification of the defendant by those witnesses who were unable to identify his photograph a second time. Those witnesses had an opportunity to view the perpetrator of the robbery in a well-lit area for three to five minutes, in close proximity to him, and with a high degree of attention. Their prior descriptions were detailed and are consistent with the defendant's general appearance. They have not yet had an opportunity to confront him, so their level of certainty in that respect has not yet been tested. The time between the crime, in late April, 1980, and the trial, scheduled for October, 1980, although a relatively long period, is not of such duration as to bar their testimony. Furthermore, the fact that these two witnesses were unable to identify the defendant's photograph at the suppression hearing from the array would indicate that they are not carrying in their mind's eye the photographic representation of the defendant, but what they actually remembered of the perpetrator's appearance at the bank robbery in April. This fact vitiates an inherent danger in the use of identification by means of a photo array, which is that a witness will retain in his memory the image of the photos rather than that of the actual perpetrator, thus reducing the trustworthiness of a subsequent courtroom identification. *Simmons, supra,* 390 U.S. at pages 383 and 384, 88 S.Ct. at pages 970–971.

 Moreover, misidentification of a defendant's photograph does not require suppression of an in-court identification where the in-court identification has an independent basis from the pretrial identification. In *United States v. Dobson,* 512 F.2d 615 (6th Cir.1975), a witness who had a good opportunity to observe the defendant at the time of the crime selected a different person from an array of photographs. The Court held that this misidentification did not prevent the same witness from making a positive in-court identification. The Court followed the reasoning in *United States v. Black,* 412 F.2d 687 (6th Cir.1969) cert. den. 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970) which stated:

"The fact that an eyewitness to an occurrence cannot make a positive identification of an individual from an examination of photographs of a number of persons, does not necessarily detract from the validity of their in-court identification where they see the individual in person. The weight to be given to their in-court identification is for the jury to determine." 412 F.2d at 689.

As noted by the Court in *United States v. Toney,* 440 F.2d 590, 591 (6th Cir.1971):

"The fact that a witness cannot identify an accused from a photograph is no reason for excluding his testimony identifying the accused in court. When a man is actually seen in court, his expression, the glance from his eyes, the movement of his facial features may be, to a witness, much more convincing that he has seen that man before than observations of a photograph taken of the accused, * * *

"The fact that some witnesses could not identify one or the other of appellants from photographs * * * but did positively identify them in court during the trial, goes only to the weight to be accorded to their testimony and not to its admissibility, even though appellants were racially distinguishable from their attorneys, with whom they were sitting when they were so identified by such witnesses."

Consequently, since an in-court identification of defendant, Stephen Richard Chapman, would, if made, be reliable under the tests of *Simmons* and *Manson,* and since it is the Court's opinion that the two witnesses' inability to identify defendant, Stephen Richard Chapman's photograph does not mandate its exclusion, the Court overrules defendant's motion to suppress the identification of him by these witnesses at the trial.

In summary, defendant's motion "to suppress the identification of the defendant by all witnesses shown a photo spread, including the defendant's picture, is granted with regard to the testimony of the witnesses' selection of the defendant's photograph on June 6, 1980, but is denied in regard to the right of the Government to attempt to make an in–court identification of the defendant by the said witnesses at the trial.

SO ORDERED