OPINION
Defendant-appellant, Yusef McLeod, appeals his conviction in the Fayette County Court of Common Pleas for aggravated robbery. Because we find that the victim's in-court identification of appellant was properly admitted, the trial court's decision is affirmed.
On June 4, 1997, the Everything Rubbermaid store at the Jeffersonville Outlet Mall on State Route 41 was robbed. On the evening of the robbery, Lana Pavey was working for "Big Dog's," a store located next to Everything Rubbermaid. Appellant entered Big Dog's. He was "real jittery * * * and kept on asking for the kids store." Pavey told appellant to go to Everything Rubbermaid, which carries a popular line of children's toys called Little Tykes.
Regina Howard and Pam Morton were working at Everything Rubbermaid when appellant entered the store at about 8:30 p.m. Appellant asked Howard and Morton about the price of Little Tykes toys. Howard then walked to the back of the store. Shortly thereafter, Morton heard Howard scream. Appellant told Morton that Howard had fallen and hurt her leg but was fine. Morton looked into the back room and saw that the safe was open and Howard was "white as a ghost." Realizing that something was wrong, Morton went to Big Dog's and asked Pavey to call 911. When Morton returned, she continued to wait on customers. Morton then saw a second man enter the store, walk towards the Little Tykes display, turn around, utter an expletive, and leave.
Howard had walked to the back room of the store and noticed that the contents of her purse had been spilled out onto the floor. Howard then saw appellant kneeling on the floor. He told Howard that he was looking for keys he had lost. Appellant then took out a gun and pointed it at Howard. Howard knelt down, put her hands over her head, and begged appellant not to hurt her. Appellant ordered Howard to open the safe. As appellant placed the contents of the safe into an Everything Rubbermaid bag, the telephone rang. Howard answered the telephone, and a dispatcher from the Fayette County Sheriff's Department told her that law enforcement would soon be there. Howard pretended that the telephone call was from her husband. Appellant finished putting the money into the bag and exited the store through the back door. Howard then told the dispatcher what had occurred.
Darcy McClure, who was working at New York Jewelry Outlet, observed a black Toyota Four-Runner parked nearby at the time of the robbery. She saw the driver exit the Four-Runner and walk to Everything Rubbermaid. Then the driver returned and started the engine of his vehicle while a second man appeared from behind Everything Rubbermaid. The second man entered the Four-Runner and two men drove away. In addition to McClure, three other retail employees observed the black Four-Runner near the scene of the robbery.
Responding to a dispatch about the robbery, Deputy Kevin Hellenthal encountered the black Toyota Four-Runner. Hellenthal followed the vehicle, but because he did not have backup, he did not immediately activate his patrol car's pursuit lights. When Hellenthal stopped for a traffic light, he briefly lost sight of the Four-Runner. Hellenthal caught up with the Four-Runner near a lot where farm equipment was being stored and then activated his pursuit lights. The Four-Runner stopped and the driver came out with his hands up. The driver was later identified as Shawn Thompson, a friend of appellant. However, there was no longer a passenger in the Four-Runner.
At approximately 9:00 p.m., Sergeant James F. Sears apprehended appellant along railroad tracks located near Walnut Lake Campground and State Route 41. This area was also near where the farm equipment was located. The next morning the area was searched again and an Everything Rubbermaid bag containing money and a gun was found. Subsequently, it was discovered that the Four-Runner had been stolen form a dealership in Columbus, Ohio.
Appellant was indicted on charges of aggravated robbery and receiving stolen property. Appellant's jury trial began on November 22, 1999. The jury found appellant guilty of aggravated robbery and not guilty of receiving stolen property. The trial court sentenced appellant to ten years in prison.
Appellant appeals his aggravated robbery conviction, raising the following assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IS [SIC] REFUSING TO STRIKE THE IDENTIFICATION TESTIMONY OF REGINA HOWARD.
 In his assignment of error, appellant argues that the trial court erred by allowing Howard to make an in-court identification of him during her testimony. Appellant contends that this in-court identification was based solely upon Howard's observations of appellant during his pre-trial appearances and is therefore unreliable and impermissible. Appellant insists that allowing the in-court identification to be heard by the jury resulted in a violation of his right to due process and his right to effective assistance of counsel.
At trial, Howard identified appellant as the man who accosted her with a gun and robbed Everything Rubbermaid. On cross-examination, Howard admitted that she had not recognized appellant's picture in a photo array presented to her within two days of the robbery. Howard further testified that she had seen appellant on two occasions when he was at court prior to his trial. The defense attorney moved for a mistrial or, in the alternative, to strike Howard's in-court identification of appellant. The trial court overruled both of these motions.
Assuming that appellant's picture was included in the photo array and that Howard failed to identify it, we will consider whether it was error to admit Howard's in-court identification into evidence.[1]
In the absence of illicit pre-trial identification procedure, as long as the state demonstrates an independent foundation for an in-court identification, any inconsistency between the in-court and pre-trial identifications goes to weight, not admissibility. See State v. Jackson
(1971), 26 Ohio St.2d 74, 76-77; United States v. Black (C.A.6, 1969),412 F.2d 687, 689-691, certiorari denied (1970), 396 U.S. 1018,90 S.Ct. 583. There must be "a very substantial likelihood of irreparable misidentification" in order to suppress identification testimony. Statev. Jells (1990), 53 Ohio St.3d 22, 27, quoting Simmons v. United States
(1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971. The fact that an eyewitness to a crime fails to make a positive identification of an individual from a review of photographs of a number of persons does not necessarily invalidate that eyewitness's in-court identification where they have the opportunity to see the individual in person. Black at 689. See, also, State v. Fulton (Dec. 28, 1989), Holmes App. No. CA-394, unreported; State v. Jenkins (July 8, 1981), Greene App. No. CA 1213, unreported.
In Black, the eyewitnesses to a robbery of a building and loan association had been interviewed by FBI agents and were shown several photographs of individuals, including a picture of Black, but could not make a positive identification of Black from the photographs. Black,412 F.2d at 689. Beulah Fritz, the teller who had been held at gunpoint and ordered to fill a bag with cash during the robbery, was one of these eyewitnesses. Id. At the request of the district attorney, Fritz attended a pretrial hearing on a motion filed in Black's case about two weeks before his trial began. Id. Fritz was not told that Black would be present and he was not pointed out to her. Id. Fritz was simply asked to observe the proceedings. Id. Black and his attorney were present in the courtroom but they had not been advised that Fritz would attend. Id.
At trial, Fritz made a positive in-court identification of Black.Black at 690. Fritz provided a detailed description of the robber's appearance. Id. at 691. On cross-examination, Fritz was questioned about the robbery and her subsequent statements to the FBI agents. Id. at 690-91.
Black challenged Fritz's viewing of him at a pretrial proceeding, which was made without notice to him or his counsel, and argued that the in-court identifications by all of the witnesses should have been excluded from the evidence. Black, 412 F.2d at 689. The Sixth Circuit Court of Appeals found that the in-court identification was admissible and the weight to be accorded to this identification was a question for the jury to determine. Black at 690. The court stated, "[c]onsidering her testimony and all the facts and circumstances, it is clear to us that Mrs. Fritz would have recognized and identified Black in court, even if she had not previously seen him at the pretrial hearing." Id. The court further found that "[t]he doctrine in Wade[2] would have to be extended to cover the present case. This we are not prepared to do." Id.[3]
In a subsequent case, the Sixth Circuit Court of Appeals stated:
 The fact that a witness cannot identify an accused from a photograph is no reason for excluding [her] testimony identifying the accused in court. When a man is actually seen in court, his expression, the glance from his eyes, the movement of his facial features may be, to a witness, much more convincing that he has seen that man before than observations of a photograph taken of the accused, or views of him at a line-up or police show-up.
 United States v. Tobey (C.A.6, 1971), 440 F.2d 590, 591.
During her re-direct examination, Howard testified that shortly after the robbery two or three deputies made an unannounced visit to the store to seek Howard's assistance in identifying appellant. In her testimony, Howard explained that her ability to recognize appellant in the photo array was negatively affected by the fact that the process was conducted very briefly, in front of two or three law enforcement officials, and in the very room that she had experienced this traumatic experience just a day or two before. Howard testified that she looked at the photo array for "a couple of seconds." When asked why Howard was unable to identify appellant in the photo array, she answered:
 Because they took me back to the same place where [the robbery] had happened, just the day or two before and I was still shook up about it and all of the pictures had * * * men with * * * dreadlocks in their hair and I never saw that on him. * * * [I]t was so hard to be in there after that.
 Reviewing Howard's testimony at trial, it is clear that she had the opportunity to observe appellant for a substantial period of time at the scene of the crime. Howard testified that she initially saw appellant in the main area of the store when he asked her about the price of a children's slide. Thereafter, she was in the back room of the store with appellant for about fifteen minutes as he committed the robbery. Appellant was not wearing a mask or disguise at the time. It is also apparent that Howard's degree of attention during this time was very high. Only Howard and appellant were in the back room of the store during this time period. Appellant accosted Howard with a gun and she feared for her safety. Howard's testimony at trial included a detailed account of what occurred in the back room of the store that night.
We find that Howard's opportunity to view appellant at the time of the robbery provided an independent basis for her in-court identification. We further find that Howard's identification did not need to be suppressed because there was no substantial likelihood of irreparable misidentification. See Jells, 53 Ohio St.3d at 27. On cross-examination of Howard, the defense brought out evidence that she had failed to identify appellant in a photo array. It was the jury's role to judge the credibility of Howard's in-court identification accordingly. See Black,412 F.2d at 690.
We also note that in addition to Howard's in-court identification, there is other evidence that tends to identify appellant as the perpetrator of this crime. Appellant was apprehended in an area near the outlet mall where Everything Rubbermaid is located and near the place where Hellenthal briefly lost sight of the suspect vehicle. An Everything Rubbermaid bag containing money and a gun was discovered in close proximity to where appellant was found. At trial, Howard identified this gun as the gun appellant had used during the robbery. Pavey, who was working with Howard on the night of the robbery, also made an in-court identification of appellant.[4] Several witnesses testified that one of the two suspicious persons they saw that night was carrying a date book or an organizer of some sort. A search of the Four-Runner revealed a day-planner, which contained appellant's birth certificate and social security card.
In his brief, appellant argues that the witness' testimony describing his appearance were not consistent. The record indicates that defense counsel was afforded full opportunity to cross-examine the witnesses. The determination of the reliability of properly admitted eyewitness identification and the credibility of the witnesses is for the jury to decide. Foster v. California (1969), 394 U.S. 440, 442, 89 S.Ct. 1127,1128, fn. 2. In this case, it was the duty of the jury to weigh all of the identification testimony, including the witness' testimony about appellant's clothing and appearance, and determine the reliability of that testimony.
Because we find that the trial court did not err in admitting Howard's in-court identification of appellant, the assignment of error is overruled.
YOUNG, P.J., and WALSH, J., concur.
 ___________ VALEN, J.
[1] Although appellant testified that she could not identify appellant in a photo array, there was no testimony asserting that appellant was, in fact, in this array. Granted, this is a reasonable inference to draw, considering that the photo array was assembled after appellant's arrest. The state has not challenged appellant's contention that his picture was included in the photo array.
[2] United States v. Wade (1967), 388 U.S. 218, 87 S.Ct. 1926, involved lineups which the court held were illegal because of the absence of counsel for the defendants.
[3] Even misidentification of a defendant's photograph does not require suppression of an in-court identification if the in-court identification has an independent basis from the pretrial misidentification. See UnitedStates v. Chapman (S.D.Ohio 1980), 501 F. Supp. 700, 703, citing Statev. Dobson (C.A.6, 1975), 512 F.2d 615.
[4] On cross-examination, Pavey stated that she had seen appellant on the morning of his trial in the hall of the courthouse and that this was the first time she had seen him since the robbery. Defense counsel objected to this in-court identification. The objection was overruled, and appellant does not challenge the validity of Pavey's identification on appeal.